6   253
6   258
21*  994
21*  996
6   253
f30   332

NIELS JENSEN, RESPONDENT, v. UNION PACIFIC RAILWAY COMPANY, APPELLANT.

WILLIAM SHAW, RESPONDENT, v. UTAH AND NORTHERN RAILWAY COMPANY, APPELLANT.

CONSTITUTIONAL LAW.—RAILROADS.—KILLING STOCK.—LIABILITY.—Section 2349, Compiled Laws, 1888, providing that every railroad company shall be liable for all the live stock that it kills, regardless of any fault on the part of the railroad company is void as taking property without due process of law under the Fifth Amendment to the Constitution of the United States.

PLEADING.— JOINDER OF CAUSES.—INJURIES TO PROPERTY.—Under Section 3220, Compiled Laws 1888, providing for the joinder of several causes of action arising out of injuries to property, the plaintiff may unite two causes of action, each for the killing of the same horse, charged in different ways.

APPEAL from judgments of the district court of the first district, and from orders refusing new trials.

The plaintiff's complaint in each case contained two causes of action. The first charged the killing of the horse, according to a complaint good at common law, for the killing of the animal by the negligence of the defendant. The second charged the same injury under the section of the statute, which is as follows:   "That any corporation operating a railway or railroad within this Territory, which shall injure or kill any live stock, by running an engine or engines, car or cars over or against any such live stock shall be liable to the owner or owners of such live stock for the damage sustained by such owner or owners by reason of such injuring or killing of such live stock, and any such corporation injuring or killing any live stock by running any engine or engines, car or cars, over or against such live stock shall, within ten days, thereafter, notify the owner or owners of such live stock so killed or injured of the fact; and any corporation failing to comply with the requirements

of this section, shall be liable to the owner or owners of such live stock so killed or injured, in the full amount of the damages sustained by the owner or owners of such stock by reason of the killing or injuring. Any person or persons owning any live stock, which shall be killed or injured in the manner set forth in this Section, within six months after the said person or persons is or are notified of the said killing or injuring as provided herein, shall furnish the corporation having so killed or injured live stock, through the nearest agent, sworn evidence of the value of said live stock, and upon the payment by said corporation to the owner or owners of said live stock, of two-thirds of the value of said stock so ascertained to have been killed or injured, said corporation shall be released from further liability."

The Court instructed the jury that the plaintiff had not proven a case under the first cause of action, but that under the second cause of action, as soon as the killing by the corporation was shown, a *prima facie* case was established, and that defendant must then show that the killing was the result of plaintiff's own negligence, or that they gave notice to the plaintiff, and tendered him two-thirds of the sworn value, none of which last two facts were in this case, and that the statute was intended to do away with the proof of negligence. In the former case the jury found no negligence in a special verdict. In the latter case there was no special verdict. The remaining facts are in the opinion.

*Mr. Parley L. Williams* and *Mr. Waldemar Van Cott* for the appellants.

*Mr. Thomas Maloney* for the respondent.

JUDD, J.:

The plaintiff below, appellee here, brought this action against the defendant company to recover the sum of $299, the value of two horses which he alleges were killed by the engine and cars of the defendant. Judgment having been rendered in the Court below upon the verdict of the jury against the defendant company, it has brought the

case to this Court, asking that the judgment be reversed and a new trial awarded. The jury, under instructions given by the trial judge, rendered a general verdict for the plaintiff, and at the request of the defendant the following request for a special finding was submitted to the jury: " Was the defendant negligent in killing the plaintiff's horses, or either of them?" To which the jury made the following response: "No." Whereupon the defendant's counsel moved the Court to render judgment in its favor upon the special finding, which was refused. An appeal is also prosecuted from the order of the Court, as well as from the judgment upon the general finding. The action of the trial court is justified by the counsel for the appellee upon the following statute of this Territory, passed in 1884: "That any corporation operating a railway or railroad within this Territory which shall injure or kill any live stock, by running an engine  *   *   *  over or against any such live stock, shall be liable to the owner or owners of such live stock for the damage sustained  *   *   *  by reason of such injuring or killing." It is conceded at the bar by the counsel for both sides that this statute creates an absolute liability upon the part of the defendant company, and that if it is a valid "law of the land" it furnishes ample authority for the action of the court below.

Counsel for the appellant urges upon this Court that the statute quoted is in conflict with that part of the Fifth Amendment to the Federal Constitution which reads as follows: "No person shall be deprived of life, liberty or property without due process of law." The origin and history of this quotation is not in dispute in American jurisprudence. It is taken from the Great Charter, and in exact language is as follows: "That no man shall be taken. or imprisoned, or disseized of his freehold, liberty, or privileges, or outlawed or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land." For more than 600 years this law has been the sheet-anchor of the liberty of the English-speaking people. Now, what is the meaning of the phrase, "judgment of his peers or the law

of the land?" When the Charter was signed by the King of England it must be borne in mind that there was then existing the common law of that country, which prescribed regular and consistent forms and methods of judicial procedure for the administration of distributive justice, and it is in the light of this common law that the quotation is to be interpreted. Lord Coke at an early day gave to the phrase "law of the land" an interpretation which has never been departed from, but adopted by all subsequent judges and writers. He said it meant "due process of law." This definition, as has been seen, is adopted into our Constitution. But it yet remains for us to define "due process of law," as understood in the common law of England, and by inheritance the common law of America. Many definitions have been attempted, but it is believed that they all come to this citation, which means that a party shall have his day in court,—trial; which means the right of each party, plaintiff and defendant, to introduce evidence to establish his right to recover on the one hand, and to establish his defense upon the part of the other; after which comes judgment. Any judgment which is rendered without these modes of procedure, or in disregard of them, is not "due process of law." Any other procedure condemns before it hears, does not proceed upon inquiry, but renders judgment before trial.

Tested by the light of these suggestions, how stands it with the statute in this case? The defendant company, under a charter granted by the legislature, of which the statute mentioned is no part, has purchased its right of way over the lands of the territory, established its track, and put thereon its engines and cars, for the purpose of carrying out the original design of the legislature in granting its charter. It will then be seen that the defendant is in the exercise of a lawful right, in a lawful way. Now, comes the statute and says to the defendant: "Notwithstanding all this, when you kill an animal you shall pay its value to the owner." That is, although you are in the exercise of a perfectly lawful pursuit, and without any fault or negligence, proof of killing and value shall be conclusive evidence of wrong on your part, and you shall not be allowed

to aver or prove the contrary. If this be due process of law, then all the legislature has to do, to take the property of A. and give it to B., is to enact that when A. sues B. certain admitted facts shall establish conclusively A.'s right to recover, and B. shall not be heard to introduce evidence to the contrary. No matter how careful and cautious an engineer may be in the management of his train; no matter how steep the grade may be that his train is going down; no matter how many hundred lives are in his care behind his engine,—must all be sacrificed to save a horse or cow, or is the company to pay the damages?

But it is said that the legislature has the right to regulate the railroads in the exercise of their franchises; and cases are cited where it has been held that they may be required to fence their roads, and, upon failure, to pay for all stock killed by them. That the legislature may require a railroad to fence its track, and that this is a proper exercise of the police power, has never been doubted, that we are aware of. And where they fail to observe such police regulations it ought not to be doubted that the legislature has the power to impose penalties for such failure. The same may be said of storing powder, dynamite, and other dangerous explosives, and operating dangerous machinery. But it is said that the legislature has the right to impose additional burdens upon railroads, from time to time, and cases are cited which uphold statutes making railroad companies absolutely liable for all damages done by the escape of fire from their engines. In the first place, it may be said that there is quite a difference between such statutes, and the one in this case; and, speaking for himself, the writer is not able to give his assent to the validity of such legislation upon any ground yet suggested. But, however all this may be, we are all of the opinion that the legislation in this case contested cannot be sustained. To do so is to take from the defendant company the right of way over its track, and confer it upon the cattle and horses of the country.

Ample authority can be found for the position taken in this opinion. The case of *Zeigler* v. *Railroad Co.*, 58 Ala., 594, is exactly in point. The cases of *Bielenberg* v.

*Railway Co.*, 20 Pac. Rep., 314, and *Cottrel* v. *Railway Co.*, 21 Pac. Rep., 416, decided by the supreme court of Idaho, are cases where statutes, exact copies of the one under consideration, were held void as not being due process of law. The case of *East Kingston* v. *Towle*, 48 N. H., 57, was where a statute undertook to make the owner of a dog liable for all damages his dog might do to sheep in the township, such damage to be fixed by the selectmen of the county. The supreme court held this act void, as not "due process of law," because it did not give the owner of the dog any right to contest the amount of the damage. See, also, Cooley, Const. Lim. (5th Ed.), pp. 430, 436, and notes. We therefore conclude that the statute in question is in conflict with the quotation from the fifth amendment, and void. The result is that the action of the court below, in not rendering judgment for the defendant upon the special finding, was erroneous, and must be reversed.

Something has been said by the counsel for the appellant about the plaintiff's pleading, complaining that it contained a double count. There is nothing in the objection. The code, at section 3220, says that "the plaintiff may unite several causes of action in the same complaint, when they all arise out of   *   *   *   or injuries to property." This is nothing more than an enactment of the common-law rules of pleading familiar to all who ever studied the elementary works on pleading. The causes of action in this case complained of arose out of injuries to property. Other questions are made in this case, but we do not think it necessary now to decide them, as they may not arise again in the trial. The judgment of the court below is reversed, and the cause remanded, with directions to proceed in conformity with the law as declared in this opinion.

The case of *William Shaw* v. *Utah and Northern Ry. Co.*, submitted to us, involves the same question upon the validity of the statute, and is controlled by the opinion in the *Jensen* case.

ZANE, C. J., and ANDERSON, J., concurred.