2000 UT 87

Jennifer SPACKMAN, By and Through her parents and guardians, Delbert and Laura SPACKMAN, Plaintiff and Appellant,

v.

BOARD OF EDUCATION OF THE BOX ELDER COUNTY SCHOOL DISTRICT, Richard Kimber, Martel Menlove, Kirk Allen, and Charles Woolums, Defendants and Appellees.

No. 990553.

Supreme Court of Utah.

Oct. 31, 2000.

James R. Hasenyager, Ogden, Peter W. Summerill, Salt Lake City, for plaintiff.

Jan Graham, Att'y Gen., Brent A. Burnett, Renee Spooner, Asst. Att'ys Gen., Salt Lake City, for defendants.

DURRANT, Justice:

¶ 1 Pursuant to rule 41 of the Utah Rules of Appellate Procedure, the United States District Court for the District of Utah, Judge Tena Campbell presiding, certified the following question to the Utah Supreme Court:

> Whether the Free and Equal Public Education Clause of the Utah Constitution (Art. X, § 1) and/or the Due Process Clause of the Utah Constitution (Art. I, § 7) are self-executing constitutional provisions that may be directly enforced without implementing legislation.

In light of the posture in which the case is presented, there are two evident components to the question: (1) whether the clauses are self-executing, and (2) if so, whether they may be enforced through a private suit for damages.[1] In regard to the first question, we answer in the affirmative as to both clauses. In regard to the second question, we provide the analytical framework to be used in resolving the issue.[2]

## BACKGROUND

¶ 2 We state the facts as described by the Federal District Court in the order of certification. Those facts are drawn from the plaintiff's complaint. As stated in that complaint, in September 1996, ten-year-old Jennifer Spackman injured her right arm at home. At the time, she attended Park Valley School. In the weeks following the injury, a fellow student at Park Valley began assaulting Spackman, causing her further injury. As a result of these injuries, Spackman contracted fibrositis and fibromyalgia in her neck, shoulder, and right arm. In the ensuing months, Spackman had difficulty regularly attending school. She missed forty-six and one-half days of school between September 20, 1996, and January 1997. During this same period, Spackman's medical care providers notified Park Valley that Spackman needed special accommodations in order to attend school. Park Valley did not provide any of the suggested accommodations.

¶ 3 On January 17, 1997, Park Valley informed Spackman's parents that she would not be allowed to attend school. The school had not theretofore provided Spackman's parents any notice or opportunity for a hearing regarding this decision. Spackman returned to school eleven days later, January 28, 1997.

¶ 4 Spackman's parents filed suit on her behalf in the Federal District Court against the Box Elder Board of Education, Board

---

1. Both parties and the Federal District Court appear to have conflated these distinct questions into a single inquiry. Although it is evident from the briefs presented to this court that the primary concern is whether the relevant constitutional clauses provide a remedy for damages, the parties have apparently assumed that the determination of whether a particular clause is self-executing necessarily answers the damages question as well. Because we conclude that this is an unfounded assumption, we must address both inquiries separately to properly answer the question posed to us. *See In re West Side Property Assoc.,* 2000 UT 85, ¶¶ 11–13, 13 P.3d 168, ¶¶ 11–13.

2. On certification from the Federal District Court, our duty is to answer the legal questions presented. *See* Utah R.App.P. 41. We will not seek to resolve the underlying dispute.

Superintendents Richard Kimber and Martell Menlove, Park Valley Principal Brian Anderson, and School District officials Kirk Allen and Charles Wollums. Among other claims, Spackman seeks damages for alleged violations of the Open Education Clause and the Due Process Clause of the Utah Constitution.

¶ 5 Defendants filed a motion to dismiss Spackman's state constitutional claims. Defendants argue that Spackman's claims should be dismissed because the Open Education Clause and the Due Process Clause are not self-executing clauses and thus cannot form the basis for a damages claim.

¶ 6 The Federal District Court determined that the state constitutional issues presented in defendants' motion to dismiss are unsettled under Utah law, and therefore certified the question to this court for resolution.

## ANALYSIS

### I. SELF–EXECUTING CLAUSES

■ ¶ 7 In essence, a self-executing constitutional clause is one that can be judicially enforced without implementing legislation. To ascertain whether a particular clause is self-executing, we consider several factors. This court has stated as follows:

> [a] constitutional provision is self-executing if it articulates a rule sufficient to give effect to the underlying rights and duties intended by the framers. In other words, courts may give effect to a provision without implementing legislation if the framers intended the provision to have immediate effect and if "no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed...." Conversely, constitutional provisions are not self-executing if they merely indicate a general principle or line of policy without supplying the means for putting them into effect.

*Bott v. DeLand,* 922 P.2d 732, 737 (Utah 1996) (citations omitted).

■ ¶ 8 In addition, a constitutional provision that prohibits certain government conduct generally qualifies as a self-executing clause "at least to the extent that courts may void incongruous legislation." *Id.* at 738 (citation omitted).

¶ 9 This court's use of the concept of self-executing constitutional provisions dates back at least to 1898, two years after the Utah Constitution took effect. *See Mercur Gold Mining & Milling Co. v. Spry,* 16 Utah 222, 228, 52 P. 382, 384 (1898). To date, this court has expressly found three constitutional provisions to be self-executing:[3] (1) the former version of article XII, section 18, providing for the liability of bank stockholders,[4] *see Lynch v. Jacobsen,* 55 Utah 129, 135–36, 184 P. 929, 932 (1919); (2) article I, section 22, the Takings Clause, *see Colman v. Utah State Land Bd.,* 795 P.2d 622, 630 (Utah 1990); and (3) article I, section 9, the Unnecessary Rigor/Cruel and Unusual Punishment Clause, *see Bott,* 922 P.2d at 737–38. We now determine whether the Due Process Clause and the Open Education Clause are also self-executing constitutional provisions.

### A. The Due Process Clause

■ ¶ 10 The Due Process Clause states that "[n]o person shall be deprived of life, liberty or property, without due process of

---

**3.** This court has expressly found five current or former constitutional provisions *not* to be self-executing: (1) former version of article XIII, section 4, dealing with the taxation of mine proceeds, *see Mercur Gold Mining,* 16 Utah at 227–28, 52 P. at 384; (2) former version of article X, section 3 (renumbered by amendment in 1986 as article X, section 5), dealing with the State School Fund, *see In re Montello Salt Co.,* 88 Utah 283, 288–89, 53 P.2d 727, 729 (1936); (3) article XI, section 5, dealing with the source and scope of municipal powers, *see Utah Rapid Transit Co. v. Ogden City,* 89 Utah 546, 549–50, 58 P.2d 1, 2–3 (1936), *overruled on other grounds by Rich v. Salt Lake City Corp.* 20 Utah 2d 339, 437 P.2d 690 (1968); (4) article I, section 17, dealing with freedom of election, *see Anderson v. Cook,* 102 Utah 265, 281, 130 P.2d 278, 285 (1942) (per curiam); and (5) former article X, section 8 (renumbered by amendment in 1986 as article X, section 3), dealing with membership of the State Board of Education, *see State Bd. of Educ. v. Commission of Fin.,* 122 Utah 164, 175, 247 P.2d 435, 440 (1952).

**4.** The current provision expressly vests in the legislature discretion to provide for liability. *See* Utah Const. art. XII, § 18 (1991).

law." Utah Const. art. I, § 7. We hold that this clause is self-executing.

¶ 11 First, the clause is inarguably prohibitory. In fact, the Utah Constitution states that all of its provisions are "mandatory and prohibitory, unless by express words they are declared to be otherwise." *Id.* art. I, § 26. There is no wording in the Due Process Clause constituting such a declaration.

¶ 12 Second, although the right to due process is expressed in relatively general terms, it is both judicially definable and enforceable. Indeed, this court has already defined and enforced the clause on numerous occasions without implementing legislation. *See, e.g., State v. Copeland,* 765 P.2d 1266, 1271–72 (Utah 1988) (invalidating certain statutory provisions on due process grounds); *State v. Fulton,* 742 P.2d 1208, 1218–19 (Utah 1987) (applying due process principles to an evidentiary issue); *State v. Tarafa,* 720 P.2d 1368, 1371–72 (Utah 1986) (applying due process principles to challenged jury instructions); *Burgers v. Maiben,* 652 P.2d 1320, 1322–23 (Utah 1982) (applying due process principles to contempt proceedings).

¶ 13 Finally, the context in which the clause was adopted suggests the framers intended to constitutionalize existing concepts of due process rather than create a new provision requiring legislative implementation. For instance, prior to ratification of the constitution, territorial courts were already applying due process concepts. *See People v. Hasbrouck,* 11 Utah 291, 306, 39 P. 918, 922 (1895); *Jensen v. Union Pac. Ry.,* 6 Utah 253, 255–57, 21 P. 994, 995 (1889). Furthermore, long before article I, section 7 came into existence, judicially defined due process principles were already firmly entrenched in the American legal landscape by virtue of the Magna Carta and the Fifth and Fourteenth Amendments to the United States Constitution. *See Jensen,* 6 Utah at 255–56, 21 P. at 995 (noting that due process rights as stated in the "Great Charter" and the Fifth Amendment have "been the sheet-anchor of the liberty of the English-speaking people" for over 600 years).

## B. The Open Education Clause

¶ 14 In pertinent part, the Open Education Clause requires that the public education system "shall be open to all children of the state." Utah Const. art. X, § 1. We hold that this provision is self-executing.

¶ 15 First, the clause is presumptively "mandatory and prohibitory" under article I, section 26. There is no wording in the Open Education Clause constituting a contrary declaration.

¶ 16 Second, the clause is judicially definable and enforceable absent enabling legislation. In fact, this court has already defined and applied the Open Education Clause. For example, in *Logan City School District v. Kowallis,* this court stated that

[t]he requirement that the schools must be open to all children of the state is a prohibition against any law or rule which would separate or divide the children of the state into classes or groups, and grant, allow, or provide one group or class educational privileges or advantages denied another. No child of school age, resident within the state, can be lawfully denied admission to the schools of the state because of race, color, location, religion, politics, or any other bar or barrier which may be set up which would deny to such child equality of educational opportunities or facilities with all other children of the state. This is a direction to the Legislature to provide a system of public schools to which all children of the state may be admitted. It is also a prohibition against the Legislature, or any other body, making any law or rule which would deny admission to, or exclude from, the public schools any child resident of the state, for any cause except the child's own conduct, behavior, or health. The schools are open to all children of the state when there are no restrictions on any child, children, or group of children which do not apply to all children in the state alike.

94 Utah 342, 347–48, 77 P.2d 348, 350–51 (1938).

¶ 17 Finally, certain historical facts strongly suggest that the constitutional framers intended that the Open Education Clause

take immediate effect without the necessity of implementing legislation. First, a public education system already existed at the time article X, section 1 was enacted. *See Logan City Sch. Dist.*, 94 Utah at 349, 77 P.2d at 351. It cannot seriously be argued that the framers crafted the Open Education Clause with the intent that it would not immediately apply to the existing public schools. Second, Congress made Utah's adoption of an open education provision a prerequisite to admission into the Union. *See Meyers v. Board of Educ. of San Juan Sch. Dist.*, 905 F.Supp. 1544, 1557 (D.Utah 1995) (citing Act of July 16, 1894, ch. 138, § 3, 28 Stat. 107, 108 (1893–95)). On the assumption that Congress would not have been satisfied with an inoperative open education provision, it seems reasonable to conclude that the framers therefore intended the Open Education Clause to be immediately operative in order to obtain statehood.

¶ 18 In sum, we hold that the Due Process Clause and the Open Education Clause are self-executing. However, a self-executing constitutional provision does not necessarily give rise to a damages suit. Self-executing constitutional provisions are commonly enforced in various ways that do not necessarily involve a monetary remedy. For example, the exclusionary rule, the *Miranda* doctrine, the invalidation of unconstitutional statutes, injunctive relief, the overturning of unconstitutional convictions, and declaratory judgments are all well-recognized and effective means of protecting important constitutional rights. Accordingly, we now turn to the question of when a self-executing constitutional provision may be enforced by a private suit for damages.

5. We disavow any statements in *Bott* that might suggest otherwise.

6. Several states have enacted statutes authorizing, to varying degrees, damage claims for state constitutional violations. *See, e.g.,* Ark.Code Ann. § 16–123–105 (Michie Supp.1997); Conn. Gen.Stat. § 31–51q (1999); Me.Rev.Stat.Ann. tit. 5, § 4682 (West Supp.1999); Mass.Gen.Laws Ann. ch. 12, § 11I (West 1996); N.M. Stat.Ann. § 41–4–12 (Michie 1996); Tex.Civ.Prac. & Rem. Code Ann. § 104.002(2) (West 1997).

7. The legislature has waived immunity for compensation claims based on the Takings Clause,

## II. MONETARY DAMAGES FOR THE VIOLATION OF A SELF-EXECUTING CLAUSE

¶ 19 This court addressed the availability of damages for constitutional violations in *Bott v. DeLand*, 922 P.2d 732 (Utah 1996). In *Bott*, we held that prisoners may collect damages from prison employees for violating the Unnecessary Rigor/Cruel and Unusual Punishment Clause. *See id.* at 739. We also stated more broadly that "self-executing constitutional provisions allow for awards of money damages." *Id.* However, we did not clearly articulate the source of our authority to provide damages, nor did we clearly establish an analytical framework for determining when damages would be an appropriate remedy for the violation of a self-executing constitutional provision. We do so now.

¶ 20 We begin by identifying the source of our authority to award damages for constitutional violations. Except for the Takings Clause, the Utah Constitution does not expressly provide damage remedies for constitutional violations. Thus, aside from the Takings Clause, there is no textual constitutional right to damages for one who suffers a constitutional tort.[5] Nor has the legislature enacted any laws authorizing damage claims for constitutional violations in general, or the violation of the Due Process Clause or the Open Education Clause in particular.[6] Thus, there is no express statutory right to damages for one who suffers a constitutional tort.[7] In the absence of applicable constitutional or statutory authority, Utah courts employ the common law. *See* Utah Code Ann. § 68–3–1 (1996).[8] Under the common

article 1, section 22. *See* Utah Code Ann. § 63–30–10.5 (1997). However, there would be no governmental immunity even in the absence of a legislative waiver. *See Colman*, 795 P.2d at 630–35 (holding that sovereign immunity does not apply to constitutional takings claims).

8. This section states as follows:

The common law of England so far as it was not repugnant to, or in conflict with, the constitution or laws of the United States, or the constitution or laws of this state, and so far only as it is consistent with and adapted to the natural and physical conditions of this state and the necessities of the people hereof, is hereby adopted and

law, "individuals had access to remedies of money damages for violations of their individual rights, and these rights, enumerated in fundamental documents, were the forerunners of many of the provisions adopted in federal and state bills of rights." *Bott,* 922 P.2d at 739 (citations omitted). Hence, a Utah court's ability to award damages for violation of a self-executing constitutional provision rests on the common law. The Restatement (Second) of Torts supports this view. Restatement section 874A states that when no specific remedy is mentioned, a court may accord an appropriate remedy to one injured from the violation of a constitutional provision. *See* Restatement (Second) of Torts § 874A & cmt. a (1979).[9] Comment (g) to section 874A suggests that a court's authority to do so arises from the common law. *See id.* cmt. g, at 306–07; *see also* Jennifer Friesen, *State Constitutional Law* § 7–5(c) (2d ed.1996) (stating that section 874A espouses a common law doctrine).

¶ 21 This common law ability to award damages for constitutional violations

> requires policy decisions by the court, and it should be aware of them and face them candidly.... The court is not required to provide the civil remedy, and yet judicial tradition gives it the authority to do this under appropriate circumstances. The court has discretion and it must be careful to exercise that discretion cautiously and soundly.

Restatement § 874A cmt. d, at 303.

¶ 22 To ensure that damage actions are permitted only "under appropriate circumstances," we therefore hold that a plaintiff must establish the following three elements before he or she may proceed with a private suit for damages.

¶ 23 First, a plaintiff must establish that he or she suffered a "flagrant" violation of his or her constitutional rights. *See Dick Fischer Dev. v. Department of Admin.,* 838 P.2d 263, 268 (Alaska 1992); *see also Bott,* 922 P.2d at 734–35, 739–40 (describing the level of defendants' culpability necessary to create damages liability). In essence, this means that a defendant must have violated "clearly established" constitutional rights "of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To be considered clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted). The requirement that the unconstitutional conduct be "flagrant" ensures that a government employee is allowed the ordinary "human frailties of forgetfulness, distractibility, or misjudgment without rendering [him or her]self liable for a constitutional violation." *Bott,* 922 P.2d at 739–40.

¶ 24 Second, a plaintiff must establish that existing remedies do not redress his or her injuries.[10] *See Schweiker v. Chilicky,* 487 U.S. 412, 425, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (refusing to create a damages remedy for an alleged due process violation where Congress had provided meaningful safeguards or remedies); *Bush v. Lucas,* 462 U.S. 367, 378, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (same with respect to alleged First Amendment violation); *Dick Fischer Dev.,* 838 P.2d at 268; *Bonner v. City of Santa*

---

shall be the rule of decision in all courts of this state.

9. Specifically, section 874A states that
   [w]hen a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

Comment (a) explains that the term "legislative provision" includes constitutional provisions.

10. We do not reach the question of whether existing federal law remedies should preclude a state court from awarding damages for a state constitutional tort. *See Bott,* 922 P.2d at 735 (noting that plaintiff filed a claim under 42 U.S.C. § 1983, but not discussing how that fact affects the availability of damages); *cf. Binette v. Sabo,* 244 Conn. 23, 710 A.2d 688, 707–08 (1998) (Callahan, C.J., concurring and dissenting) (arguing that the relevant inquiry is whether the plaintiff lacks a state remedy).

*Ana,* 45 Cal.App.4th 1465, 53 Cal.Rptr.2d 671, 673, 676–78 (1996) (refusing to create damages remedy for alleged due process violation where alternative common law tort cause of action existed); Restatement (Second) of Torts § 874A cmt. h, at 309 (suggesting courts should consider the adequacy of existing remedies when deciding whether to provide a tort remedy). This second requirement is meant to ensure that courts use their common law remedial power cautiously and in favor of existing remedies. *See Lynch v. Jacobsen,* 55 Utah 129, 138–39, 184 P. 929, 933 (1919). We urge caution in light of the myriad policy considerations involved in a decision to award damages against a governmental agency and/or its employees for a constitutional violation. Moreover, we urge deference to existing remedies out of respect for separation of powers' principles. In general, the legislative branch has the authority, and in many cases is better suited, to establish appropriate remedies for individual injuries. By requiring courts to defer to relevant legislative determinations of appropriate remedies, we respect the legislature's important role in our constitutional system of government.

¶ 25 Third, a plaintiff must establish that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries.[11] *See, e.g., Bott,* 922 P.2d at 739 (stating that "if prisoners' rights under article I, section 9 are violated, injunctive relief may not be adequate to remedy prisoners' injuries"); *see also, e.g., Davis v. Passman,* 442 U.S. 228, 245, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (stating that damages are an appropriate remedy where plaintiff was unconstitutionally terminated from her job on a congressional staff because, in part, "equitable relief in the form of reinstatement would be unavailing" in light of the fact that her former employer was no longer a congressman); *cf. Rockhouse Mountain Property Owners Ass'n, Inc. v. Town of Conway,* 127 N.H. 593, 503 A.2d 1385, 1388 (1986) (stating that damages are an inappropriate remedy for a constitutional violation where the alleged injury "can be undone" by the judiciary). This final requirement is meant to take advantage of the meaningful role equitable relief can play in redressing constitutional injuries,[12] while not implicating so many of the difficult policy considerations raised by a decision to award damages.

¶ 26 If the Federal District Court concludes the foregoing requirements are satisfied, a trial on the merits should proceed as would any other tort claim.

## CONCLUSION

¶ 27 In conclusion, we hold that the Due Process Clause and the Open Education Clause are self-executing constitutional provisions. The question of whether they in turn allow for damage awards depends on the application of the analysis provided herein to the particular circumstances of the case.

¶ 28 C.J., HOWE, A.C.J., RUSSON, DURHAM and WILKINS concur in J., DURRANT's opinion.

---

11. In this regard, procedural due process claims would appear to be particularly amenable to redress through equitable means. Such relief can be precisely tailored to grant the very thing a plaintiff alleges has been wrongfully denied-due process. For example, a court can generally require the offending party to redo correctly the "procedure" that allegedly lacked the mandated safeguards. *See, e.g., Rockhouse Mountain Property Owners Ass'n v. Town of Conway,* 127 N.H. 593, 503 A.2d 1385, 1388 (1986).

12. In fact, forceful arguments have been made that equitable relief is often a more appropriate remedy for constitutional torts than are damages. *See* Vicki C. Jackson, *The Supreme Court, the Eleventh Amendment, and State Sovereign Immunity,* 98 Yale L.J. 1, 91–94 (1988); Christina Whitman, *Constitutional Torts,* 79 Mich.L.Rev. 5, 47–56 (1980); *see also* Susan Bandes, *Reinventing Bivens: The Self Executing Constitution,* 68 S.Cal.L.Rev. 289, 294 (1995) ("[I]n many cases damages are not the most appropriate or effective remedy; declaratory or injunctive relief is preferable.").