2013 UT App 137

# THE UTAH COURT OF APPEALS

CHARLES D. FRIEDMAN,
Plaintiff and Appellant,
*v.*
SALT LAKE COUNTY,
Defendant and Appellee.

Memorandum Decision
No. 20110870-CA
Filed May 31, 2013

Third District, Salt Lake Department
The Honorable Anthony B. Quinn
No. 090916703

Charles D. Friedman, Appellant Pro Se
Zachary L. Lancaster, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES WILLIAM A. THORNE JR. and
STEPHEN L. ROTH concurred.

CHRISTIANSEN, Judge:

¶1      Charles D. Friedman appeals from the trial court's dismissal
of his constitutional claims against Salt Lake County (the County).
We affirm.

¶2      Friedman alleges that the County violated his rights under
the Utah Constitution to due process, freedom from involuntary
servitude, and the free exercise of his religion. *See* Utah Const. art.
I, § 7 ("No person shall be deprived of life, liberty or property,
without due process of law."); *id.* art. I, § 21 ("Neither slavery nor
involuntary servitude, except as a punishment for crime, whereof
the party shall have been duly convicted, shall exist within this

State."); *id.* art. I, § 4 (guaranteeing "free exercise" of religion). In his complaint, Friedman seeks equitable relief and monetary damages.[1]

¶3      In May 2009, Friedman was a federal prisoner being held at the Salt Lake County Adult Detention Center (the Detention Center).[2] On Saturday, May 9, 2009, during Friedman's recreation hour, a jail officer instructed Friedman to clean writing from his cell wall and Friedman refused. Friedman is Jewish and, accordingly, observes Saturday as his Sabbath. Jewish tenets require that he perform no work on Saturdays. While declining to clean his wall may have been consistent with his religious beliefs, Friedman's refusal to follow the officer's order constituted a violation of the Detention Center's rules. As a result, the officer

---

[1]Specifically, Friedman seeks declaratory and injunctive relief and damages. However, Friedman's equitable relief claims became moot when he was transferred from the Salt Lake County Adult Detention Center, which, based upon the return address on his complaint, occurred before Friedman filed the present action. "A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants." *In re C.D.*, 2010 UT 66, ¶ 11, 245 P.3d 724 (citation and internal quotation marks omitted). An appellate court will generally not consider mooted issues on appeal. *State v. Vicente*, 2004 UT 6, ¶ 3, 84 P.3d 1191. Because Friedman is no longer being held at the Salt Lake County Adult Detention Center, any relief in the form of either a declaratory judgment or an injunction would not affect his rights, and his equitable claims are therefore moot.

[2]"On appeal from a motion to dismiss, we review the facts only as they are alleged in the complaint. We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff. We recite the facts accordingly." *See Peck v. State*, 2008 UT 39, ¶ 2, 191 P.3d 4 (footnotes and internal quotation marks omitted).

filed a Prisoner Violation Report and terminated the remainder of Friedman's recreation hour. Friedman filed two Prisoner Grievance Forms, requesting a written apology and claiming that the officer violated his constitutional right to the free exercise of his religion and his right to refuse forced labor. Friedman's requests for relief were denied. In response to Friedman's Prisoner Grievance Forms, the prison officials explained that it was a jail rule that he clean his cell every day. On May 11, 2009, a Prisoner Disciplinary Hearing Disposition held that Friedman was in violation of prisoner rules and regulations. Friedman's Prisoner Grievance Appeal was also denied. Thereafter, on October 6, 2009, Friedman filed a complaint with the trial court.

¶4     The trial court reviewed Friedman's complaint as a petition for extraordinary relief pursuant to rule 65B(b) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 65B(a) ("Where no other plain, speedy and adequate remedy is available, a person may petition the court for extraordinary relief on any of the grounds set forth in paragraph (b) . . . ."); *id.* R. 65B(b) (governing "petitions claiming that a person has been wrongfully restrained of personal liberty"). On January 14, 2010, the trial court dismissed Friedman's due process and involuntary servitude claims as frivolous pursuant to rule 65B(b)(5). *See id.* R. 65B(b)(5) (explaining the procedure by which a court may dismiss a petition that is frivolous on its face). With respect to Friedman's free exercise claim, however, the trial court determined that it was not frivolous on its face and ordered the County to respond to Friedman's claim. The County subsequently filed a rule 12(b)(6) motion to dismiss Friedman's free exercise claim, which motion the trial court granted on July 29, 2011. *See id.* R. 12(b)(6) (providing a defense for "failure to state a claim upon which relief can be granted").

¶5     Friedman did not petition for extraordinary relief under rule 65B. Rather, he filed a civil complaint seeking equitable and monetary relief. Additionally, Friedman challenges only the legal conclusions underlying the trial court's dismissal of his claims, and not their procedural posture. We therefore analyze all of

Friedman's claims pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure,[3] and "we will affirm the trial court's dismissal only if it is apparent that as a matter of law, the plaintiff[] could not recover under the facts alleged." *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 30, 70 P.3d 17 (citation and internal quotation marks omitted).

¶6    "Because a rule 12(b)(6) dismissal is a question of law, we give the trial court's ruling no deference and review it under a correctness standard." *Tomlinson v. NCR Corp.*, 2013 UT App 26, ¶ 5, 296 P.3d 760 (citation and internal quotation marks omitted). "Additionally, because interpreting the Utah Constitution presents a question of law, we review the trial court's determination for correctness and give no deference to its legal conclusions." *Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 17, 73 P.3d 325 (citation and internal quotation marks omitted).

¶7    In his due process claim, Friedman argues that the County's policies and practices violated his procedural due process rights by punishing him for practicing his religion without "a hearing or

---

[3]Even if Friedman's complaint were properly viewed as a Rule 65B petition, "[i]t is clear that rule 12(b)(6) of the Utah Rules of Civil Procedure does apply to [Rule 65B] petitions." *See Alvarez v. Galetka*, 933 P.2d 987, 989 (Utah 1997). It is also well established that "an appellate court may affirm . . . on any legal ground or theory apparent on the record." *Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (citation and internal quotation marks omitted). In either case, "the issue before the court is whether the petitioner has alleged enough in the complaint to state a cause of action . . . ." *See Alvarez*, 933 P.2d at 989 (evaluating Rule 65B petition under Utah R. Civ. P. 12(b)(6)); *cf. Moench v. State*, 2002 UT App 333, ¶ 7, 57 P.3d 1116 ("To determine whether a post conviction petition is frivolous, a trial court need only determine whether the petition contains sufficient facts to state a cause of action.").

other process." In analyzing due process, the Utah Supreme Court has stated, "At a minimum, [t]imely and adequate notice and an opportunity to be heard in a meaningful way are at the very heart of procedural fairness." *In re Worthen*, 926 P.2d 853, 876 (Utah 1996) (alteration in original) (citation and internal quotation marks omitted).

¶8     Friedman has failed to state a claim upon which relief can be granted. He has simply not "alleged enough in the complaint to state a cause of action" for a due process violation in this instance. *See Alvarez v. Galetka*, 933 P.2d 987, 989 (Utah 1997). The instruction to clean the writing off his cell wall and the filing of the Prisoner Violation Report were both conducted in accordance with the Detention Center's rules and regulations. Although Friedman's recreation hour was terminated before the full process was complete, Friedman has not met his burden of demonstrating that the County denied him due process during the initial disciplinary action or in the administrative review process that followed. In fact, Friedman was given a disciplinary hearing just two days after the alleged grievance arose. Friedman was also allowed to make a prisoner grievance appeal. Thus, we determine that Friedman's due process claim was properly dismissed.[4]

---

[4]Friedman has failed to show that filing a section 1983 civil rights action at the time of the alleged constitutional violations would not have adequately redressed his injuries. *See* 42 U.S.C.A. § 1983 (West 2012). In *Spackman ex rel. Spackman v. Board of Education*, 2000 UT 87, 16 P.3d 533, the Utah Supreme Court held that the due process clause is self-executing, *id.* ¶ 10, and that violation of that clause may be remedied through a private suit for damages under certain circumstances, *id.* ¶ 22. In order to sustain an action for damages, a plaintiff must establish three elements, including that "existing remedies do not redress his or her injuries." *See id.* ¶ 24. *But see id.* ¶ 24 n.10 (deferring "the question of whether existing federal law remedies should

(continued...)

¶9    Friedman also argues that the trial court erred in dismissing his claim that the officer's order to clean his cell on his day of Sabbath constituted involuntary servitude. Friedman analogizes his situation to that of a guest at a hotel who is required to clean his own room.

¶10    The Utah Constitution, article I, section 21 states, "Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within this State." Utah Const. art. I, § 21. In his complaint, Friedman states that he was a "duly detained federal prisoner being held at the Salt Lake County Jail pursuant to a housing agreement between the United States Marshal Service and Salt Lake County." In his brief on appeal, he states that he "was an unsentenced federal detainee."

¶11    Even accepting the facts in Friedman's complaint as true, and therefore, assuming as true that Friedman had not yet been "duly convicted," *see id.*, Friedman has failed to allege facts that would support a claim of involuntary servitude. By his own admission, at the time of the officer's order, Friedman was detained at the Detention Center. Every inmate of that facility is subject to its rules and regulations. The jail officer instructed Friedman to clean off "some nondescript writing" from his cell wall. In so doing, the officer was seeking to enforce the jail rule requiring inmates to clean their cells on a daily basis. After Friedman refused, explaining that it was his Sabbath, the officer penalized Friedman

---

[4](...continued)
preclude a state court from awarding damages for a state constitutional tort"). However, because we determine that Friedman failed to adequately state a claim for violation of his due process rights, we do not address whether he would have been entitled to monetary damages for the due process violations he alleges.

by discontinuing his recreation hour pursuant to Detention Center rules and regulations.

¶12    Friedman's allegations do not give rise to involuntary servitude because Friedman essentially chose to disobey the officer's order to clean the wall and thereby have his recreation hour discontinued. He fails to allege any other repercussion as a result of the officer's Prisoner Violation Report. *See Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 459 (2d Cir. 1996) ("In application, courts have consistently found the involuntary servitude standard is not so rigorous as to prohibit all forms of labor that one person is compelled to perform for the benefit of another. The Thirteenth Amendment [to the United States Constitution[5]] does not bar labor that an individual may, at least in some sense, choose not to perform, even where the consequences of that choice are 'exceedingly bad.'" (citation omitted)). In addition, the facts alleged by Friedman do not support a claim of "servitude" performed "for

---

[5]Because the Thirteenth Amendment to the United States Constitution and article 1, section 21 of the Utah Constitution are substantively identical, *compare* U.S. Const. amend. XIII, § 1 ("Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.") *with* Utah Const. art. I, § 21 ("Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within this State."), and because there is no relevant Utah case law interpreting article 1, section 21, we are guided by Thirteenth Amendment jurisprudence to analyze Friedman's involuntary servitude claim. *Cf. General Elec. Co. v. Thrifty Sales, Inc.*, 301 P.2d 741, 745 (Utah 1956) (noting that decisions interpreting the 14th amendment to the U.S. Constitution by federal courts are "helpful and persuasive" in the interpretation of the "substantially similar" due process clause of the Utah Constitution).

another," as opposed to undertaking mere housekeeping chores in his own cell. *See McGarry v. Pallito*, 687 F.3d 505, 514 (2d Cir. 2012) ("Where a detainee is required to perform personally-related chores, this work is not for another. . . . [T]he Thirteenth Amendment may be violated if a[n] . . . institution requires inmates to perform chores which . . . are not personally related, but are required to be performed solely in order to assist in the defraying of institutional costs." (alterations in original) (citation and internal quotation marks omitted)); *Hause v. Vaught*, 993 F.2d 1079, 1085 (4th Cir. 1993) (determining that "[d]aily general housekeeping responsibilities" did not violate the Thirteenth Amendment prohibition of involuntary servitude).

¶13    We conclude that Friedman has failed to state a claim that the County violated his right to be free from involuntary servitude. As a result, the trial court correctly dismissed Friedman's claim.

¶14    Finally, Friedman argues that he was denied his right to freely exercise his religion. Before the trial court, the County argued that the free exercise clause of Utah's Constitution is not self-executing and, even if it is, Friedman did not meet the necessary pleading requirements under *Spackman ex rel. Spackman v. Board of Education*, 2000 UT 87, 16 P.3d 533. *See id.* ¶¶ 22–25 (holding that "[t]o ensure that damage actions are permitted only 'under appropriate circumstances,' . . . a plaintiff must establish . . . three elements before he or she may proceed with a private suit for damages"—first, "that he or she suffered a 'flagrant' violation of his or her constitutional rights"; second, "that existing remedies do not redress his or her injuries"; and third, "that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries").

¶15    The trial court ruled that the free exercise clause is self-executing. *See id.* ¶ 7 ("In essence, a self-executing constitutional clause is one that can be judicially enforced without implementing legislation."). However, the trial court ruled that Friedman did not establish the second prong of *Spackman*—that there were no

existing remedies that could have redressed his injuries. *See id.* ¶ 24. The trial court therefore dismissed Friedman's free exercise claim.

¶16    We begin our analysis of this issue "in adherence to the general rule that courts should avoid reaching constitutional issues if the case can be decided on other grounds." *West v. Thomson Newspapers*, 872 P.2d 999, 1004 (Utah 1994). In this case, we need not address whether the free exercise clause is self-executing because Friedman did not meet the pleading elements under *Spackman*.

¶17    Friedman argues that the elements required by *Spackman* constitute a heightened pleading requirement from which pro se litigants should be exempt. While it is true that a pro se litigant "should be accorded every consideration that may reasonably be indulged," *State v. Winfield*, 2006 UT 4, ¶ 19, 128 P.3d 1171 (citation and internal quotation marks omitted), it is also true that a pro se litigant "will be held to the same standard of knowledge and practice as any qualified member of the bar." *Id.* (citation and internal quotation marks omitted).

¶18    Even granting Friedman as much latitude as possible in liberally construing his complaint, and even assuming that he can meet the first two elements of *Spackman*, he still failed to plead facts sufficient to allege the third element of *Spackman*—"that equitable relief, such as an injunction [or declaratory judgment], was and is wholly inadequate to protect [his] rights or redress his . . . injuries."[6] *See Spackman*, 2000 UT 87, ¶ 25. "This final requirement is meant to take advantage of the meaningful role equitable relief

---

[6]We affirm the trial court based on a different *Spackman* element. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (stating that it is well established in Utah law that we "may affirm . . . on any legal ground or theory apparent on the record" (citation and internal quotation marks omitted)).

can play in redressing constitutional injuries, while not implicating so many of the difficult policy considerations raised by a decision to award damages." *Id.* (footnote omitted).

¶19   Equitable relief was available to Friedman in the form of an injunction to change the prison rules regarding work on an inmate's Sabbath. During the time his recreation period was restricted, Friedman had at his disposal the option to file a rule 65B petition for extraordinary relief. To the extent that he attempted to do that, *see supra* note 3, his equitable claims are moot because he is no longer housed at the Detention Center, *see supra* note 1. And Friedman failed to allege any facts sufficient to show that the injunctive remedy would have been inadequate in any event. Because Friedman cannot meet this element of *Spackman*, we affirm the trial court's dismissal of Friedman's free exercise claim.

¶20   In conclusion, we affirm the trial court's dismissal of Friedman's due process claim, involuntary servitude claim, and free exercise of religion claim.

———————