Dennis Sanders and Willie True, Plaintiffs in Error,

*v.*

State of Tennessee, Defendant in Error.

392 S.W.2d 916.

(*Nashville,* December Term, 1964.)

Opinion filed July 30, 1965.

James E. Walton, William P. Bryant, Jr., Springfield, for plaintiffs in error.

George F. McCanless, Attorney General, Marne S. Matherne, Assistant Attorney General, for defendant in error.

Mr. Justice Holmes delivered the opinion of the Court.

The plaintiffs in error, Dennis Sanders and Willie True, were convicted of burglary in the third degree and sentenced to confinement in the State Penitentiary for a period of three years. They were represented in the Trial Court by court-appointed counsel, who have duly perfected their appeal to this Court and filed assignments of error. We wish to express our appreciation of the valuable services rendered without hope of compensation by court-appointed counsel in this case.

Since the first three assignments of error relate to the sufficiency of the evidence to sustain the verdict of the jury and the judgment of the Trial Court thereon, it is necessary briefly to review the facts appearing in the record:

About noon on Sunday, September 27, 1964, the Robertson Farmers Cooperative Building, which is located about a mile south of Springfield, Tennessee, on U. S. Highway 41, and adjacent to the tracks of the Louisville & Nashville Railroad, was broken into. The building was equipped with an electrical burglar alarm system which was sounding an alarm when a deputy sheriff of Robertson County arrived at the building. This deputy went to the rear of the building and found that a back door adjacent to the railroad tracks had a panel knocked out of it. The deputy saw two persons, one a tall man and one short, walking north along the railroad track toward Springfield. As this deputy returned to the front of the building, the Sheriff of Robertson County arrived at the building.

The Sheriff testified that after meeting his deputy at the building he drove to a bridge over the railroad tracks where he could see for a long distance in both directions

along the tracks. The Sheriff testified he saw two men leave the tracks and go into a roadside park north of the burglarized building and that, as he was returning to the burglarized building, he picked up the defendants, one of whom was a tall man and one short. The defendants were then taken to jail.

A search was made of the Robertson Farmers Cooperative Building. It was found that nothing had been taken from the building, but that the office cabinets, desks, and safe were opened and papers were scattered about the floor. The Robertson Farmers Cooperative handles farm supplies, hardware and accessories. A quantity of merchandise had been moved from the retail store section of the building to the warehouse near the back door which had been broken into.

While examining the building with the officers, the Assistant Manager of the Robertson Farmers Cooperative found a blue Ronson cigaret lighter in the retail store section of the building. Later that afternoon the personal effects taken from the defendant Sanders when he was arrested were placed on the dining room table in the jail and the blue Ronson cigaret lighter found in the building was placed with them. The defendant Sanders was then brought into the dining room alone. He was informed of his constitutional rights and of the charges against him and of his right to counsel. Sanders stated to the officers that he and his brother-in-law, the defendant True, were passing through Springfield, Tennessee, going from Florida to Minnesota and that their car had run off the road a short distance south of Springfield. According to the officers who were present when Sanders was brought into the dining room at the jail, he denied all knowledge of the burglary. He claimed ownership of

all of the items placed on the dining room table except the blue cigaret lighter, which he said belonged to the defendant True. These officers testified that Sanders was then taken to his cell and his personal effects were replaced in his envelope.

The defendant True's belongings were then removed from an envelope and placed on the dining room table with the blue cigaret lighter placed with them. True was then brought in alone. After being advised of his constitutional rights, he was questioned. He told the officers that he and Sanders were traveling from Florida to Minnesota and told the officers of the wreck they had had and complained of pain he was suffering from an injury received in the automobile accident. True also denied any knowledge of the burglary. These officers testified that True claimed all of the personal effects which had been placed on the dining room table in the jail, stating that the blue cigaret lighter belonged to his wife.

Early the evening of the burglary, the defendant True was taken to a hospital where X-rays revealed he had a fracture of a bone in his leg. He was then given medical attention.

Samples of mud taken from the defendants' clothing, shoes and gloves, which were found later in their car, together with samples of mud taken from the rear of the burglarized building were sent to the FBI laboratory for analysis. The laboratory report showed soils taken from the defendants' apparel and the soil behind the building were similar. It was testified that the FBI never used the term "identical" in making soil comparisons and that "similar" is the strongest statement used by that agency in making soil comparisons.

An investigator of the Tennessee Bureau of Identification was present with the local officers and testified that the defendant Sanders stated the blue cigaret lighter belonged to the defendant True and that the defendant True stated this lighter was his wife's. The defendant Sanders testified at the trial and denied stating to the officers that this lighter belonged to the defendant True. On the trial he stated he had never seen the lighter until the day he was arrested. Sanders testified that he was with True at all times prior to their arrest on the date of their arrest. In his testimony, Sanders denied that the deputy sheriff was present in the dining room in the jail when Sanders was questioned about the cigaret lighter. The defendant True did not testify at the trial.

█ It thus appears a sharp issue of fact was made as to whether or not the cigaret lighter which was found in the building shortly after the breaking and entering belonged to defendant True. If this lighter was in fact the defendant True's, then the criminal agency of the defendant True was adequately established and the defendant Sanders testified he was with the defendant True at all material times. It is well settled that the verdict of the jury approved by the Trial Judge resolves all conflicts in the testimony and establishes the credibility of the witnesses. *Batey v. State,* 191 Tenn. 592, 235 S.W.2d 591, *Anderson v. State,* 207 Tenn. 486, 341 S.W.2d 385, *Essary v. State,* 210 Tenn. 220, 357 S.W.2d 342.

█ Both the Trial Judge and the jury observed the manner and demeanor of the witnesses upon the stand and heard their testimony. No doubt the jury and the Trial Judge believed the testimony of the investigator for the Tennessee Bureau of Identification and the testimony of the deputy sheriff that True claimed the blue

cigaret lighter which was found in the building shortly after the burglary belonged to his wife and was carried by True. True's lighter could only have gotten to the place where it was found by being dropped by him while in the building. Of course, the presumption of defendants' innocence has been removed by the verdict of the jury and a presumption of their guilt raised in this Court. The burden here is upon the defendants to show that the evidence preponderates against the verdict. *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826, *Holt v. State,* 210 Tenn. 188, 357 S.W.2d 57. The first three assignments of error are overruled.

■ By the fourth assignment of error, it is asserted that the verdict of the jury is so harsh and oppressive as to evince passion and prejudice on the part of the jury. The punishment fixed by the jury is the minimum punishment for burglary in the third degree. T.C.A. sec. 39-904. Therefore, this assignment is overruled.

■ The fifth assignment of error asserts "The defendants, after their arrest, were treated with unnecessary rigor in violation of Article 1, Section 13, Constitution of Tennessee." This assignment of error is based on the fact that, following their arrest, the clothes and shoes of the defendants were taken from them and kept for several days, and for the further reason that there was a delay of several hours in seeing that the defendant True had proper medical attention. There is no claim that the defendants were not furnished with other clothing, and the record shows that the purpose of taking the clothes and shoes of the defendants was to get soil specimens therefrom which were forwarded to the FBI laboratory for examination. Admittedly, both defendants had climbed an embankment following the wreck of their

automobile and had walked for some distance before they were arrested. According to the testimony of the defendant Sanders, they walked along the highway and several cars stopped and they talked to the occupants of these cars briefly. Sanders did not testify they sought to ride in any of these cars rather than to walk.

The defendant Sanders further admitted in his testimony that the Sheriff, when arresting them, had not abused them in any way and that he, Sanders, did not see whether or not the Sheriff had a pistol at the time of the arrest. Furthermore, the defendant Sanders in his testimony admitted that no one had mistreated, threatened or beaten him in the Robertson County Jail and that the Sheriff made available to the defendants, while in jail, money found in their automobile after their arrest. The defendant True was taken to the hospital and given a medical examination and medical treatment during the early evening of the day he was arrested. We find no merit in this assignment of error and it is overruled.

By the sixth and last assignment of error, it is asserted that the District Attorney General, in his opening argument to the jury, commented upon the failure of the defendant True to take the witness stand. With reference to the argument of the District Attorney General, the record shows:

"On several occasions he commented that 'Dennis Sanders was not testifying just for himself—he was also testifying for Willie True.' One of these occasions had to do with Sanders' testimony that he was with True at all times, and the Attorney-General commented that this, together with evidence placing the defendant True in the Co-Op building, also placed Sanders there.

While the Attorney-General was arguing this part of the case, he made a number of gestures, pointing toward defendant True."

At the conclusion of this argument, defense counsel asked the Court to excuse the jury and, in the absence of the jury, made his motion for a mistrial "on the ground that the Attorney-General, in his argument, had been guilty of misconduct by subtly commenting on the failure of the defendant True to take the stand."

The Trial Judge overruled this motion "stating that the portion of the argument objected to by the Attorneys for defendants did not appear to him to be a comment on the failure of the defendant True to testify, but merely explanatory of reasoning by which the jurors, if they found one of the defendants guilty of third degree burglary, should find both of them guilty of the offense."

It has long been settled in this State that "an argument based upon the failure of the defendant to testify cannot but be most prejudicial to the defendant". *Staples v. State,* 89 Tenn. 231, 233, 14 S.W. 603. Here, though, we agree with the ruling of the Trial Judge that such was not the import of the argument of the District Attorney General, as reflected by the narrative bill of exceptions. Certainly, it was proper for him to argue that if the cigaret lighter placed the defendant True at the scene of the crime, then the testimony of Sanders that he was always with True also placed the defendant Sanders there. By testifying that he, Sanders, was never at the scene of the crime and that he was always with True, the defendant Sanders was testifying that True was not at the scene of the crime, so that Sanders was "also testifying for Willie True."

No complaint is made of the instructions by the Trial Judge to the jury and the charge of the Court is not included in the record before us. We can, therefore, only conclude that the charge was full and fair and fully protected all of the rights of these defendants.

The assignments of error are overruled and the judgment of the Trial Court is affirmed.

NOTE: This opinion was prepared by MR. JUSTICE ANDREW O. HOLMES and approved by all members of the Court prior to his death on July 24, 1965, and was released by the Court on July 30, 1965.