2008 UT 29

**Kelvin DEXTER, Plaintiff and Appellee,**

v.

**Jason BOSKO, Barry Sanns, and Hank Galetka, Defendants and Appellants.**

No. 20060526.

Supreme Court of Utah.

April 11, 2008.

Peter W. Summerill, James R. Hasenyager, Ogden, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Peggy E. Stone, Philip S. Lott, Asst. Att'ys Gen., Salt Lake City, for defendants.

WILKINS, Associate Chief Justice:

¶ 1 Defendants, two corrections officers and the warden who had charge of the plaintiff as a prisoner, appeal the district court's denial of their motion to dismiss plaintiff's personal injury claims. The plaintiff's claims arise from injuries suffered in a vehicle accident while being transported in custody. The plaintiff brought the claims under our state constitutional prohibition on unnecessary rigor in confinement. On the basis of the pleadings alone, the trial court determined that the complaint, if proven true, made sufficient allegations to establish a violation of the Utah Constitution's unnecessary rigor clause. We agree but remand for additional proceedings in due course on other material factual issues that may, or may not, make the claim defective as a matter of law.

## BACKGROUND

¶ 2 When reviewing a motion to dismiss we assume the factual allegations in the complaint are true and consider them in the light most favorable to the nonmoving party.[1] In this instance, that is the plaintiff, Kelvin Dexter. As such, we recite the facts in that light.

¶ 3 In December 2000, Utah State Prison guards Jason Bosko and Barry Sanns loaded Dexter and eight other inmates into a fifteen-passenger van for transport by freeway to the Beaver County Jail. The van was equipped with working seatbelts; but the inmates, who were handcuffed and shackled, were unable to buckle their own seatbelts. Several inmates asked to have their seatbelts fastened,[2] but Bosko and Sanns refused.[3] Bosko, the driver, then fastened his own seatbelt and began driving. During the journey, Bosko momentarily diverted his attention from the road, the van drifted, Bosko overcorrected, and the van went into the median. As a result, the van rolled three times, and Dexter was thrown from the vehicle. Dexter was paralyzed as a result of injuries sustained in the accident and died five years later due to complications from those injuries.

¶ 4 Dexter filed a complaint against Defendants in December 2004, contending that the prison officials' failure to place him in a seatbelt violated his rights under article I, section 9 of the Utah Constitution. Defendants filed a motion to dismiss and a motion for judgment on the pleadings. The district court denied the motion to dismiss, holding that Dexter's complaint was sufficient to state a claim under the unnecessary rigor clause.[4] Defendants subsequently filed an

1. *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 9, 104 P.3d 1226.

2. Dexter was not one of the inmates who asked to be placed in a seatbelt.

3. At the time of the accident, prison policy required that inmates be in a seatbelt while in transport, a policy that was regularly violated.

Hank Galetka, then the Utah State Prison Warden, knowingly disregarded the policy.

4. The district court dismissed Dexter's claims arising under Utah's cruel and unusual punishment clause. Dexter did not appeal that decision.

interlocutory appeal from the denial of the motion to dismiss.

## ANALYSIS

 ¶ 5 The central question on appeal is the scope of the unnecessary rigor clause of the Utah Constitution and how, if at all, the clause applies here. "[W]e review de novo a district court's interpretation of constitutional provisions, granting it no deference." [5]

### I. SCOPE OF THE UNNECESSARY RIGOR CLAUSE

¶ 6 Article I, section 9 of the Utah Constitution states as follows: "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. *Persons arrested or imprisoned shall not be treated with unnecessary rigor.*" [6]

¶ 7 Although the first sentence of article I, section 9 closely approximates the language of the Eighth Amendment to the United States Constitution,[7] the unnecessary rigor provision has no federal counterpart. Nearly identical provisions, however, exist in only four other state constitutions.[8] The relative rarity of unnecessary rigor clauses results in a dearth of unnecessary rigor jurisprudence in other jurisdictions, and we have had few opportunities to interpret or apply the unnecessary rigor clause of the Utah Constitution.

¶ 8 In our 1996 decision in *Bott v. DeLand,* we said that "the guarantee against unnecessarily rigorous treatment ... protects [prisoners and arrestees] against unnecessary abuse." [9] We also said that the applicable "definition of 'abuse' focuses on 'needlessly

harsh, degrading, or dehumanizing' treatment of prisoners." [10]

¶ 9 Defendants argue that the somewhat broad interpretation of unnecessary rigor in *Bott* should be rejected and that a historical analysis supports a more narrow interpretation of the clause. The unnecessary rigor clause, they contend, was meant by the framers and Utah citizens as a proscription only against the physically cruel and barbarous treatment of prisoners that characterized the American colonial era. According to Defendants, the only important distinction between the unnecessary rigor clause and the cruel and unusual punishment clause is the stage of criminal proceedings at which the protection applies, rather than in the scope of the protection granted.

¶ 10 Dexter, on the other hand, argues that the interpretation of the unnecessary rigor clause in *Bott* is supported by the plain language and historical context of the provision, and that Defendants' proposed interpretation must be rejected because it would render the unnecessary rigor clause meaningless. Dexter further asserts that the authors of the Utah Constitution intended the clause to provide protection from inhumane treatment and to regulate conditions of confinement and treatment of inmates.

 ¶ 11 In interpreting provisions of the Utah Constitution, we begin with a review of the constitutional text. We also "inform our textual interpretation with historical evidence of the framers' intent." [11] Finally, we may consider well-reasoned and meaningful decisions made by courts of last

5. *Univ. of Utah v. Shurtleff,* 2006 UT 51, ¶ 15, 144 P.3d 1109.

6. Utah Const. art. I, § 9 (emphasis added).

7. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

8. *See* Ind. Const. art. I, § 15 ("[N]o person arrested, or confined in jail, shall be treated with unnecessary rigor."); Or. Const. art. I, § 13 ("No person arrested, or confined in jail, shall be treated with unnecessary rigor."); Tenn. Const. art. I, § 13 ("[N]o person arrested and confined in jail shall be treated with unnecessary rigor.");

Wyo. Const. art. I, § 16 ("No person arrested and confined in jail shall be treated with unnecessary rigor. The erection of safe and comfortable prisons, and inspection of prisons, and the humane treatment of prisoners shall be provided for.").

9. 922 P.2d 732, 737 (Utah 1996).

10. *Id.* at 740 (quoting *Sterling v. Cupp,* 290 Or. 611, 625 P.2d 123, 131 (1981)).

11. *Am. Bush v. City of S. Salt Lake,* 2006 UT 40, ¶ 10, 140 P.3d 1235.

resort in sister states with similar constitutional provisions.[12]

¶ 12 The term "rigor" is defined as "an act or instance of strictness, severity, harshness, oppression, or cruelty." [13] Such a meaning applies well in this context. It appears supported by the plain language of the unnecessary rigor provision itself, which prohibits unnecessarily rigorous treatment of persons arrested or imprisoned, particularly when considered in conjunction with the other language of the same section regarding excessive fines, bail, or punishments. The history of the provision, which remains unchanged since statehood, is also consistent with such a use of the word.

¶ 13 At the Utah constitutional convention of 1895, Delegate, and later Governor, Heber M. Wells proclaimed that the object of the unnecessary rigor provision was to "protect persons in jail if they shall be treated inhumanely." [14]

¶ 14 By today's standards, the conditions in the prison and county jails at the time of the Utah constitutional convention were bleak. Surely this inhumane treatment influenced the convention delegates to include the unnecessary rigor clause in the Utah Constitution. The territorial prison was reportedly in terrible condition, and the county jails were reported to have "barbarous practices." [15] "In Utah, the desire to eliminate brutality and to ensure decent and humane treatment for convicts may have been the catalyst of the unnecessary rigor provision." [16]

¶ 15 Statutes in effect at the time suggest the same meaning. Officers guilty of willful acts of inhumanity or oppression toward a prisoner were themselves subject to prosecution resulting in imprisonment or fines.[17] Officers who, without lawful necessity, assaulted or beat anyone were likewise punishable.[18] Any injury to a prisoner not authorized by law was also punishable as if the prisoner had not been convicted.[19]

¶ 16 The prohibition against unnecessary rigor clearly includes intentional physical abuse of persons under arrest or imprisoned. "[A]lthough police may use 'reasonable and necessary force' in making an arrest, the prohibition against unnecessary rigor does not allow police officers to commit assault and battery on a criminal suspect." [20]

¶ 17 The unnecessary rigor clause of the Utah Constitution protects persons arrested or imprisoned from the imposition of circumstances on them during their confinement that demand more of the prisoner than society is entitled to require. The restriction on unnecessary rigor is focused on the circumstances and nature of the process and conditions of confinement. By contrast, the cruel and unusual punishment clause in the state constitution is directed to the sentence imposed. While there is some overlap on a factual level, the purposes are different. Torture may be cruel and unusual but strict silence during given hours may not. Strict silence, however, may impose unnecessary rigor or unduly harsh restrictions on the service of one's otherwise proper sentence.

12. *Id.* ¶ 11.

13. *Webster's Third New International Dictionary* 1957 (1986).

14. 1 *Official Report of the Proceedings and Debates of the Convention* 257 (1898) (comment of Heber M. Wells).

15. James G. McLaren, *The Meaning of the "Unnecessary Rigor" Provision in the Utah Constitution,* 10 BYU J. Pub.L. 27, 40 (1996).

16. *Id.* at 37. Other states have construed their unnecessary rigor provisions to also protect persons from inhumane prison conditions. Oregon, for example, has said that its unnecessary rigor provision extends to the conditions of a prisoner's incarceration. *See Sterling v. Cupp,* 290 Or. 611, 625 P.2d 123, 129 (1981) ("The guarantee against 'unnecessary rigor' is not ... confined only to such historically 'rigorous' practices as shackles, the ball and chain, or to physically brutal treatment or conditions, though these are the most obvious examples.").

17. Compiled Laws of Utah 581 (1876) (repealed 1973).

18. *Id.* (repealed 1973).

19. *Id.* at 650–51 (repealed 1973).

20. *Bott v. DeLand,* 922 P.2d 732, 741 (Utah 1996).

¶ 18 As with all such fact-intensive inquiries, the particular event or act in question, and the context in which it arose, are necessary elements to a determination of whether a particular set of circumstances rises to the level of a constitutionally prohibited act.

## II. PLAINTIFF'S UNNECESSARY RIGOR CLAIM

 ¶ 19 A prisoner suffers from unnecessary rigor when subject to unreasonably harsh, strict, or severe treatment. This may include being unnecessarily exposed to an increased risk of serious harm. In *Bott*, we upheld a jury verdict holding prison officials liable for violating a prisoner's rights under article I, section 9 when they failed to provide the prisoner with timely medical attention despite his repeated requests and grievances.[21] We also noted, however, that not every case of retrospectively inadequate attention to prisoner requests was a constitutional violation. We declared in *Bott* that a violation of the prohibition on unnecessary rigor must arise from "treatment that is clearly excessive or deficient and unjustified, not merely the frustrations, inconveniences, and irritations that are common to prison life."[22] When the claim of unnecessary rigor arises from an injury, a constitutional violation is made out only when the act complained of presented a substantial risk of serious injury for which there was no reasonable justification at the time.

¶ 20 The allegations of the complaint in the record do not address the necessity, if any, of the acts involved, nor do they include any assessment of the risk inherent in the act. As such, the allegations may be sufficient to withstand a motion to dismiss for failure to state a claim but may not withstand further evidentiary challenge. We leave it to the district court to resolve the question in the course of further proceedings.

## III. "FLAGRANT" VIOLATION

¶ 21 On remand to the district court, we also offer guidance on the requirement that the conduct at issue be more than negligent to be actionable. In *Bott*, we held that the unnecessary rigor clause is a self-executing provision that allows for awards of money damages.[23] We also held, however, that prison employees may not be liable for all constitutional violations: "To engender liability, an employee's conduct must be voluntary and sufficiently culpable to contravene a prisoner's right to be free from . . . unnecessary rigor."[24]

¶ 22 In *Spackman v. Board of Education*, we noted that the common law gives the judiciary authority to provide civil remedies for constitutional violations under appropriate circumstances.[25] Taking advantage of that authority, we specified that to proceed with a private suit for damages under a constitutional tort theory, a plaintiff must establish three elements:

First, a plaintiff must establish that he or she suffered a "flagrant" violation of his or her constitutional rights. . . .

Second, a plaintiff must establish that existing remedies do not redress his or her injuries. . . .

Third, a plaintiff must establish that equitable relief, such as an injunction, was and

---

21. 922 P.2d 732.

22. *Id.* at 741. *But see Sanders v. State*, 216 Tenn. 425, 392 S.W.2d 916, 918–19 (1965) (stating that there was no violation of the unnecessary rigor clause where arresting officers provided medical treatment for a fractured leg several hours after an arrest).

There is some disagreement among courts as to whether a prison official's act that increases the risk of harm to an inmate violates the cruel and unusual punishment clause. *Compare Brown v. Mo. Dep't of Corrs.*, 353 F.3d 1038 (8th Cir.2004) (holding prison officials' failure to seat- belt inmate upon request, which resulted in injuries from an accident, could constitute cruel and unusual punishment), *with Dexter v. Ford Motor Co.*, 92 F.Appx 637, 641 (10th Cir.2004) (holding that failure to seatbelt the inmate did not violate the Eighth Amendment because "[t]he eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted").

23. 922 P.2d at 737–39.

24. *Id.* at 740.

25. 2000 UT 87, ¶ 21, 16 P.3d 533.

is wholly inadequate to protect the plaintiff's rights or redress his or her injuries.[26]

¶ 23 The flagrant violation element means that a defendant must have violated clearly established constitutional rights of which a reasonable person would have known. To be considered clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that [constitutional] right. The requirement that the unconstitutional conduct be flagrant ensures that a government employee is allowed the ordinary human frailties of forgetfulness, distractibility, or misjudgment without rendering [himself] liable for a constitutional violation.[27]

¶ 24 Defendants argue that, even if they violated the constitutional prohibition on unnecessary rigor when they failed to buckle Dexter's seatbelt, the failure to act did not constitute a flagrant violation. They argue that because there was no meaningful Utah law establishing the contours of the unnecessary rigor clause, the right to have the seatbelt buckled was not then a clearly established right. Defendants make a reasonable point. The factual circumstances surrounding Dexter's treatment, however, are insufficiently presented to allow us to decide as a matter of law just how clearly established this particular concern may have been at the time.

¶ 25 If an official knowingly and unjustifiably subjects an inmate to circumstances previously identified as being unnecessarily rigorous, that is obviously a flagrant violation. Where a clear prohibition has not been previously known to the official, more may be required to establish a flagrant violation. We are satisfied that a flagrant violation of the unnecessary rigor clause has occurred whenever the following two elements are established: First, the nature of the act presents an obvious and known serious risk of harm to the arrested or imprisoned person; and second, knowing of that risk, the official acts without other reasonable justification.

¶ 26 Whether a violation has occurred will depend on the specific facts of the case. The finder of fact must first determine whether the risk of harm was serious, and whether that risk was obvious and known to the defendants. If so, the finder of fact must then address what, if any, justification existed for the act, as well as the reasonableness of that justification.

¶ 27 Affirmed and remanded for proceedings consistent herewith.

¶ 28 Justice DURRANT concurs in Associate Chief Justice WILKINS' opinion.

NEHRING, Justice, concurring:

¶ 29 The lead opinion explores with skill and accuracy the text and historical context of the Utah Constitution's unnecessary rigor clause. Moreover, Associate Chief Justice Wilkins has formulated tests for assaying whether unnecessary rigor is present and whether it is unconstitutional that are true to the history and text of article I, section 9. I therefore join the opinion of the court.

¶ 30 I write separately to emphasize that the test for unnecessary rigor formulated by the lead opinion in this case is limited to claims of a constitutional violation arising from personal injury sustained by an inmate. I believe that this underscoring is necessary because neither the lead opinion's test for what constitutes unnecessary rigor nor the test for when an actor inflicting unnecessary rigor may be liable applies to unnecessary rigor claims generally.

¶ 31 As the lead opinion notes, *Bott v. DeLand* defined unnecessary rigor to include " 'needlessly harsh, degrading, or dehumanizing' treatment of prisoners." 922 P.2d 732, 740 (Utah 1996) (quoting *Sterling v. Cupp*, 290 Or. 611, 625 P.2d 123, 131 (1981)). Not all needlessly harsh, degrading, or dehumanizing treatment will result in serious injury. Degradation and dehumanization certainly inflict a heavy toll on a person, but not always in the form of physical injuries. Our

---

**26.** *Id.* ¶¶ 23–25.

**27.** *Id.* ¶ 23 (internal quotation marks and citations omitted).

nation's recent and unfortunate experience with the treatment of Iraqi prisoners is but one illustration of unjustifiable human degradation unaccompanied, in most instances, by serious physical injury. It is not necessary in this case to formulate tests to apply to claims of unnecessary rigor where serious injury is not present. It is clear to me, however, that the focus of such tests is properly on the nature of the acts to which the inmate was exposed and not on the foreseeability of injury, serious or otherwise.

¶ 32 While the lead opinion makes clear that our test for making out a constitutional violation in Mr. Dexter's case applies only "[w]hen the claim of unnecessary rigor arises from an injury," *supra* ¶ 22, it is less clear that our test for establishing the flagrant nature of the violation is similarly limited. As applied to Mr. Dexter and to those whose claims arise from a physical injury, a person who inflicts unnecessary rigor will be exposed to liability only if "the nature of the act presents an obvious and known serious risk of harm to the arrested or imprisoned person; and second, knowing of that risk, the official acts without other reasonable justification." *Supra* ¶ 30. This two-part test presumes that the official's act resulted in physical injury to the person in custody. As formulated, the test may also be read to imply that money damages are recoverable only by victims of unnecessary rigor who sustain demonstrable physical injury. No such inference should be extracted from the adoption of our flagrant violation test. It is a test crafted to address this case and others that involve physical injury. We leave for another day the question of whether money damages may be recovered by persons in custody who may have been subjected to unnecessary rigor but who have not sustained physical injuries.

¶ 33 Finally, I turn to the broader issue of whether and how to apply an originalist interpretation to article I, section 9. Drawing an analogy between the unnecessary rigor clause and an originalist interpretation of the Eighth Amendment prohibition against cruel and unusual punishment in the United States Constitution, one that would deem constitutional any punishment not found to be offensive in colonial times, Defendants would have us similarly circumscribe our assessment of unnecessary rigor to the practices of that era. The lead opinion effectively employs textual and historical analysis to disable Defendants' argument. Although I endorse that analysis, I believe that the text of article I, section 9 renders improper an originalist interpretation of its protections. The clause proscribes the use of "unnecessary rigor." These two words permit several interpretations to be extracted from them. First, some rigor in the treatment of persons in custody is permitted. Only unnecessary rigor is not. This means that necessary rigor is permitted. Necessity is, at least in this context, a protean term. The rigor necessary to manage a prison riot is likely greater than that required to manage a work release crew. Similarly, the shifting tides of penal philosophy will affect the necessity of certain forms of rigor. Thus, the presence of the term unnecessary imposes a temporal relativity on article I, section 9 that is not present in the text of the Eighth Amendment and makes this provision of the Utah Constitution a poor candidate for an originalist interpretation.

¶ 34 Chief Justice DURHAM and Justice PARRISH concur in Justice NEHRING's opinion.