*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2024 UT 37**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

DEREK J. WILLDEN,
*Petitioner.*

No. 20220747
Heard February 7, 2024
Filed September 5, 2024

On Appeal of Interlocutory Order

Third District, Salt Lake County
The Honorable Elizabeth A. Hruby-Mills
No. 211911155

Attorneys:

Sean D. Reyes, Att'y Gen., Christopher A. Bates,
Andrew F. Peterson, Deputy Solics. Gen., Salt Lake City,
for respondent
Dain E. Smoland, Salt Lake City, for petitioner

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

JUSTICE HAGEN authored a concurring opinion, in which
JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

### INTRODUCTION

¶1 In 2021, Derek Willden was charged with several counts of
physical and sexual assault. While preparing for Willden's trial, the
State asked the district court to order Willden to disclose certain
information pursuant to Utah Rule of Criminal Procedure 16(b).

One category of items that the State sought—audio recordings of interviews that Willden's counsel had conducted with witnesses—is relevant to this appeal.

¶2    Willden objected to the State's discovery motion, arguing that the recordings were attorney work product. Compelled disclosure of those documents would, Willden argued, violate the protection that rule 16(b)(4) affords to attorney work product, as well as his rights under the Utah and United States Constitutions. The district court was unpersuaded and gave Willden thirty days to turn over the recordings. Willden petitioned for interlocutory appeal of that decision, the court of appeals granted his petition, and we recalled this case to hear it directly.

¶3    This case is our first opportunity to consider the language of rule 16(b) following its amendment in 2021. As amended, the rule states that a criminal defendant's "disclosure obligations do not include . . . attorney work product."[1] We take that language at face value. The recorded interviews the district court ordered Willden to disclose are attorney work product, and rule 16(b)(4) protects attorney work product from compelled disclosure. Accordingly, we reverse the district court's order. Because we resolve this case based on rule 16(b), we do not reach Willden's constitutional arguments.

## BACKGROUND[2]

¶4    In October 2021, Derek Willden was charged with several crimes based on allegations that he physically and sexually assaulted his domestic partner. Willden and his partner have two sons, and both Willden and the State suggest that the sons may have witnessed parts of the alleged assault.

¶5    To prepare for trial, Willden's defense counsel and an investigator interviewed the sons regarding their memories of the night in question. Willden's counsel made and kept audio

---

[1] UTAH R. CRIM. P. 16(b)(4).

[2] "Because this case comes to us on an interlocutory appeal, the allegations we recite have not been tried and therefore remain allegations." *State v. Stewart*, 2018 UT 24, ¶ 2 n.1, 438 P.3d 515. Accordingly, "we recount the facts as alleged and in a light most favorable to the ruling below." *State v. Taylor*, 2015 UT 42, ¶ 2 n.2, 349 P.3d 696.

recordings of those interviews. After Willden was bound over for trial, but before any trial date was set, the State moved for discovery under Utah Rule of Criminal Procedure 16(b). Among other things, the State asked for a list of the witnesses that Willden intended to call at trial and any statements made by those witnesses. Later events show that this request was in part designed to elicit the recordings of the sons' interviews.

¶6    Willden opposed the State's motion, arguing that the request would violate rule 16(b)(4), as well as his rights under the Utah and United States Constitutions. Willden also contended that the request was premature, as he could not know what witnesses he would call or what statements he would elicit from them until after the State had presented its case in chief. The State countered that its request was permitted by rule 16(b), that the request wouldn't violate any of Willden's constitutional rights, and that it was disingenuous for Willden to claim that he was wholly ignorant of what witnesses and statements he intended to use at trial.

¶7    The district court heard oral argument on the issue. During that hearing, the State suggested it would call the sons as prosecution witnesses and accordingly broadened its discovery request to include any statements Willden intended to use for impeachment. After listening to both sides, the district court orally granted the State's discovery motion. The judge reasoned that the requested recordings could be redacted so that they did not contain any of defense counsel's "opinion . . . analysis . . . [or] strategy," but instead contained "simply the statements made by the witness[es]." So edited, the judge believed, the recordings would not contain any attorney work product and thus would not be protected by rule 16. The district court then issued a written order that gave Willden thirty days to disclose the recordings.[3]

¶8    Before the thirty-day deadline expired, Willden sought permission to file an interlocutory appeal challenging the discovery order. After the court of appeals granted Willden's request, we

---

[3] When the district court issued its oral ruling at the end of the hearing, trial had been set for less than thirty days out. But that trial date had been stricken without a replacement when the district court issued its written order some time later.

recalled the case. We have jurisdiction under Utah Code subsection 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶9    Willden contends that the district court's discovery order violates Utah Rule of Criminal Procedure 16, as well as his rights under the Utah and United States Constitutions. "As a general rule, we grant district courts . . . deference in matters of discovery . . . ."[4] But the proper interpretation of a rule of procedure or constitutional provision is a question of law.[5] Because Willden challenges the district court's interpretation of rule 16, we review its decision for correctness.[6]

## ANALYSIS

¶10   Before we reach the merits of Willden's challenge, we first address the burden he bears on appeal. The State argues that it is not enough for Willden to prove that the district court's order was in error; he must also show that the order will cause him prejudice. In support, the State cites our harmless error rule, which provides that "an erroneous decision by a trial court cannot result in reversible error unless the error is harmful."[7] We agree that a party seeking an interlocutory appeal under rule 5 of the Utah Rules of Appellate Procedure must show that the alleged error merits review. But we disagree with the State about when that showing must occur.

---

[4] *Dahl v. Dahl*, 2015 UT 79, ¶ 63, 459 P.3d 276.

[5] *See State v. Bybee*, 2000 UT 43, ¶ 10, 1 P.3d 1087 ("The proper interpretation of a rule of procedure is a question of law. . . ." (cleaned up)); *Dexter v. Bosko*, 2008 UT 29, ¶ 5, 184 P.3d 592 ("We review de novo a district court's interpretation of constitutional provisions, granting it no deference." (cleaned up)).

[6] *See In re United Effort Plan Tr.*, 2013 UT 5, ¶ 18, 296 P.3d 742.

[7] *State v. Lafferty*, 2001 UT 19, ¶ 42, 20 P.3d 342 (cleaned up); *see also* UTAH R. CRIM. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded.").

¶11 "As a general rule only *final* judgments are subject to an appeal."[8] But where a party believes that an interlocutory[9] decision made by a court should be subject to immediate appellate review, the party may file "a petition for permission to appeal from the interlocutory order with the appellate court with jurisdiction over the case."[10] The decision to grant or deny such a petition rests with the discretion of the appellate court: a rule 5 appeal is "not an appeal as a matter of right."[11] And permission to appeal "may be granted only if it appears that the order involves substantial rights and may materially affect the final decision or that a determination of the correctness of the order before final judgment will better serve the administration and interests of justice."[12] This means that, for an interlocutory appeal to be heard at all, an appellate court must decide that the issue on appeal "involves substantial rights," and that it either will "materially affect the final decision" or that the interests of justice otherwise warrant granting the petition.

¶12 Indeed, that was the case here. Willden argued in his petition for interlocutory review that the district court's discovery order involved his substantial rights, and that interlocutory review was warranted because "the unique type of harm threatened by [the order] cannot be remediated with an appeal after trial." By granting Willden's petition, the court of appeals seems to have agreed with those assertions. We see little merit in requiring

---

[8] *Washington Townhomes, LLC v. Wash. Cnty. Water Conservation Dist.*, 2016 UT 43, ¶ 5, 388 P.3d 753.

[9] *See Interlocutory*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("[I]nterim or temporary; not constituting a final resolution of the whole controversy.").

[10] UTAH R. APP. P. 5(a). Our cases note two other ways of obtaining review of an interlocutory decision: "appeals that are expressly authorized by statute" and "appeals under rule 54(b) of the Utah Rules of Civil Procedure." *Mellor v. Wasatch Crest Mut. Ins.*, 2012 UT 24, ¶ 16, 282 P.3d 981. Because Willden sought interlocutory review under rule 5, neither of those alternative avenues are at issue in this case.

[11] *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶ 14, 428 P.3d 1133.

[12] UTAH R. APP. P. 5(g).

Willden to again demonstrate that the error he claims is worthy of review. Thus, appellants on interlocutory review are not required, as part of their burden on appeal, to show prejudice flowing from the error.

¶13   Turning to the merits of the case, we first consider the amended language of rule 16(b) and how it protects a criminal defendant's attorney work product. We then apply the language of the rule to the facts of this case and conclude that the district court's order violates rule 16(b).

## I. RULE 16(b)

¶14   Rule 16 of the Utah Rules of Criminal Procedure provides a framework for determining the discovery obligations of parties in a criminal case. Its layout is relatively simple: subparagraphs (a) and (b) describe the disclosure obligations of prosecutors and defendants respectively; subparagraphs (c) through (f) describe the procedures, limitations, and potential sanctions that apply to those obligations.[13]

¶15 Subparagraph 16(b), at issue in this case, has a similar structure to the larger rule. It first enumerates a defendant's disclosure obligations. Subparagraph (b)(1) states the general rule that "[t]he defense must disclose to the prosecutor any item of evidence which the court determines on good cause shown should be made available to the prosecutor in order for the prosecutor to adequately prepare the prosecutor's case for trial."[14] Subparagraph (b)(2) states that defendants who intend to raise a defense of alibi or insanity "must disclose to the prosecutor such information as required by statute."[15] And subparagraph (b)(3) requires defendants to disclose a list of the witnesses "whom the defense intends to call" at trial and "[a]ny exhibits that the defense intends to introduce at trial" no later than fourteen days, "or as soon as practicable, before trial."[16]

---

[13] UTAH R. CRIM. P. 16.

[14] *Id.* R. 16(b)(1).

[15] *Id.* R. 16(b)(2); *see also* UTAH CODE § 77-14-2 (requiring defendants to submit notice of an alibi defense); *id.* § 77-14-4 (requiring defendants to submit notice of an insanity defense).

[16] UTAH R. CRIM. P. 16(b)(3)(A)–(B).

¶16 Subparagraph (b)(4) states that a "defendant's disclosure obligations do not include information or material that is privileged or attorney work product."[17] This language creates a clear hierarchy; subparagraphs (b)(1)–(3) create disclosure obligations, and subparagraph (b)(4) limits those obligations. This means that subparagraphs (b)(1)–(3) cannot be used to compel a defendant to disclose information or material protected by (b)(4).[18] So, for example, if a prosecutor requests that a defendant disclose evidence under rule 16(b)(1), the defendant could defeat that request by showing that the evidence in question is "privileged or attorney work product."[19]

¶17 At issue in this case is the protection that subparagraph (b)(4) provides to attorney work product in particular. We provided the governing definition of attorney work product in *Gold Standard v. American Barrick*.[20] Under *Gold Standard*, attorney work product refers to "(1) . . . documents and tangible things otherwise discoverable, (2) prepared in anticipation of litigation or for trial, (3) by or for another party or by or for that party's representative."[21]

¶18 Though this definition is broad, we expect that in most cases the disclosure obligations created by rule 16(b)(1)–(3) will not intersect with the protection that subparagraph (b)(4) provides to work product. For example, subparagraph (b)(2) references the

---

[17] *Id.* R. 16(b)(4). This subparagraph also notes that "[a]ttorney work product protection is not subject to the exception in Rule 26(b)(6) of the Utah Rules of Civil Procedure." *Id.*

[18] Because of the limited issue on appeal in this case, we do not reach the question of whether rule 16(b)(4) limits disclosure obligations that stem from other sources, such as the Utah Rules of Evidence, or a court's inherent authority to manage a trial. *See, e.g.*, UTAH R. EVID. 612 (requiring parties to turn over documents used to refresh a witness's memory either while the witness is testifying, or "before testifying, if the court decides that justice requires the party to have those options").

[19] *See* UTAH R. CRIM. P. 16(b)(4).

[20] *Gold Standard, Inc. v. Am. Barrick Res. Corp.*, 805 P.2d 164 (Utah 1990).

[21] *Id.* at 168.

disclosures required by the alibi statute.[22] That statute obligates a defendant "who intends to offer evidence of an alibi" to provide the prosecutor with a written notice including "the place where the defendant claims to have been at the time of the alleged offense" and "the names and addresses of the witnesses by whom [the defendant] proposes to establish alibi."[23]

¶19 While this sort of notice may nominally be considered work product under the *Gold Standard* definition, there is a commonsense difference between an attorney's work product and documents created solely for the purpose of being filed with the court or disclosed to an opposing party. The work product doctrine is designed to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories[,] and plan his strategy without undue and needless interference."[24]

¶20 That process often takes the form of "interviews, statements, memoranda, correspondence, briefs," and other documents.[25] If those documents were "open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten," and "the interests of the clients and the cause of justice would be poorly served."[26] In contrast, documents produced for the sole purpose of complying with a party's pre-trial disclosure obligations are categorically different. They are created with the knowledge that they will be viewed by opposing parties, and there is thus no loss of privacy when such documents are turned over.[27]

---

[22] UTAH R. CRIM. P. 16(b)(2).

[23] UTAH CODE § 77-14-2(1).

[24] *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

[25] *Id.*

[26] *Id.*

[27] This logic also suggests that preparatory drafts of documents *are* attorney work product and, as a result, are subject to rule 16(b)(4)'s protection.

## II. THE DISTRICT COURT'S ORDER VIOLATED RULE 16(b)

¶21 With that framework in mind, we turn to examine whether the district court's pretrial discovery order in this case violated rule 16(b). This analysis requires that we ask two questions. Did the court's pre-trial discovery order align with the discovery obligations placed on Willden by rule 16(b)(1)–(3)? And if so, did the order require Willden to disclose attorney work product?

¶22 As to the first question, the district court concluded that the State's request for disclosure of the witness recordings satisfied the requirements of rule 16(b)(1), which obligates defendants to "disclose to the prosecutor any item of evidence which the court determines on good cause shown should be made available to the prosecutor in order for the prosecutor to adequately prepare the prosecutor's case for trial."[28] Willden does not directly challenge that conclusion on appeal, and we assume, without deciding, that it is correct.

¶23 As to the second question, the State argues that "verbatim witness statements . . . are not attorney work product." This is because, in the State's eyes, the work product doctrine is designed to protect the thoughts and impressions of an attorney, not the facts that an attorney observed. Accordingly, the "factual record of what a witness said during an interview" doesn't contain anything that deserves the protection of the work product doctrine. The district court offered a similar analysis when it ordered Willden to turn over the interview recordings. The court acknowledged that the recordings contained attorney work product, but it suggested that the attorney work product could be removed if the recordings were edited so that they contained only the factual statements made by the witnesses.

¶24 While these arguments may have succeeded under the pre-amendment version of rule 16, they fail to gain purchase under the current version.[29] Our court of appeals had interpreted the old

---

[28] UTAH R. CRIM. P. 16(b)(1).

[29] *Compare id.* R. 16(c) (2010) ("Except as otherwise provided or as privileged, the defense shall disclose to the prosecutor such information as required by statute . . . and any other item of evidence which the court determines on good cause shown should

(continued . . .)

version of rule 16 as permitting reliance upon a distinction drawn by the Utah Rules of Civil Procedure.[30] Under that distinction, courts could distinguish between "core" attorney work product, which contains the thoughts and impressions of an attorney, and "factual" work product, which does not.[31] The amendments to rule 16(b) now explicitly forbid such reliance: "Attorney work product protection is not subject to the exception in Rule 26(b)(6) of the Utah Rules of Civil Procedure."[32] With that connection severed, rule 16(b) no longer provides a way to distinguish between different classifications of attorney work product.

¶25   Because we reject the State's argument on this point, we determine whether the interview recordings are work product based on the definition of attorney work product we set out in *Gold Standard*.[33] Under that definition, work product is defined as "(1) . . . documents and tangible things otherwise discoverable, (2) prepared in anticipation of litigation or for trial, (3) by or for another party or by or for that party's representative."[34] The interview recordings satisfy each element of that standard. The

---

be made available to the prosecutor . . . ."), *with id.* R. 16(b)(4) (2024) ("The defendant's disclosure obligations do not include information or material that is privileged or attorney work product. Attorney work product protection is not subject to the exception in Rule 26(b)(6) of the Utah Rules of Civil Procedure.").

[30] *See, e.g.*, *State v. Steffen*, 2020 UT App 95, ¶ 32 n.9, 468 P.3d 568.

[31] *See S. Utah Wilderness All. v. Automated Geographic Reference Ctr.*, 2008 UT 88, ¶ 24, 200 P.3d 643 (interpreting the attorney work product protections provided by Utah Rule of Civil Procedure 26).

[32] UTAH R. CRIM. P. 16(b)(4); *see* UTAH R. CIV. P. 26(b)(6) (allowing discovery of attorney work product that does not contain "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party" upon a showing "that the party seeking discovery has substantial need of the materials and that the party is unable without undue hardship to obtain substantially equivalent materials by other means").

[33] *Gold Standard, Inc. v. Am. Barrick Res. Corp.*, 805 P.2d 164 (Utah 1990).

[34] *Id.* at 168.

audio files at issue (1) are tangible things capable of being discovered, (2) were created in preparation for trial, and (3) were created for Willden's legal representative by an investigator retained by that representative.

## CONCLUSION

¶26  Given our interpretation of rule 16, the determination that the interview recordings are work product resolves this appeal. Because these witness recordings are attorney work product, they are protected by rule 16(b)(4). And because rule 16(b)(4)'s protection of work product trumps the discovery obligations that may be created by the other subparagraphs of rule 16(b), the district court erred by ordering Willden to disclose the recordings under rule 16(b)(1). Accordingly, we reverse the district court's discovery order and remand this case for further proceedings.

———————

JUSTICE HAGEN, concurring in the Opinion of the Court:

¶27  We fully join in the opinion of the court. The plain language of rule 16(b) of the Utah Rules of Criminal Procedure, coupled with our caselaw defining attorney work product, compels the conclusion that witness statements gathered by the defense in anticipation of litigation are exempt from disclosure. We write separately to note that a majority of states do impose a reciprocal discovery obligation on the defense to turn over witness statements. Those state rules were driven by a series of developments in federal law beginning nearly seventy years ago.

¶28  The prosecution's duty to turn over witness statements originated in *Jencks v. United States*, 353 U.S. 657 (1957). In *Jencks*, two of the prosecution's witnesses testified on cross-examination that they had made prior oral and written statements to the FBI. *Id.* at 665. The defense sought an order requiring the prosecution to produce those statements, but the trial court denied the request. *Id.* at 665–66. The Fifth Circuit Court of Appeals affirmed, holding that disclosure was not required because the defense had not made a preliminary showing that the statements were inconsistent with the witnesses' testimony. *See id.* at 666 & n.11.

¶29  The Supreme Court reversed, holding that the trial court should have ordered the prosecution to produce the witnesses' statements. *Id.* at 672. Because "the accused is helpless to know or discover conflict without inspecting the reports," the Court held

that the defense is not required to make a preliminary showing of inconsistency. *Id.* at 668–69. Instead, the defense is entitled to inspect any statements that "are shown to relate to the testimony of the witness." *Id.* at 669. "Only after inspection of the reports by the accused, must the trial judge determine admissibility—e.g., evidentiary questions of inconsistency, materiality and relevancy—of the contents and the method to be employed for the elimination of parts immaterial or irrelevant." *Id.*

¶30 The Court's holding in *Jencks* was later codified as the Jencks Act. *See* 18 U.S.C. § 3500. The Act requires federal prosecutors to disclose any statement a witness made or adopted that "relates to the subject matter as to which the witness has testified."[35] *Id.* § 3500(b). A court will order the prosecution to produce these statements upon the defendant's motion, but only after direct examination of the witness concludes. *Id.*

¶31 After the Jencks Act was passed, the Supreme Court decided *United States v. Nobles*, 422 U.S. 225 (1975). In that case, a defense investigator had conducted pretrial interviews of two prosecution witnesses and memorialized those conversations in a written report. *Id.* at 227. Defense counsel relied on that report when cross-examining the witnesses and then called the investigator to testify about the interviews.[36] *Id.* at 227–29. The trial court ordered the defense to produce a copy of the report for the court to inspect and redact *in camera*, after which the court would provide the report to the prosecution. *Id.* at 229. When the defense refused to produce the report, the court prohibited the investigator from testifying. *Id.* On appeal, the Ninth Circuit Court of Appeals reversed, holding, in part, "that the Fifth Amendment prohibited the disclosure condition imposed in this case." *Id.* at 229–30.

¶32 The Supreme Court granted certiorari and reversed the Ninth Circuit's decision. *Id.* at 227. The Court rejected the idea "that

---

[35] The term "statement" includes a written statement signed or adopted by the witness, a recording or "substantially verbatim recital of an oral statement made by" the witness, and any statement made by the witness to a grand jury. 18 U.S.C. § 3500(e).

[36] In contrast to the present case, the defense in *United States v. Nobles*, 422 U.S. 225 (1975), waived any work product privilege by using the reports at trial. *See id.* at 239–40.

the Fifth Amendment renders criminal discovery basically a one-way street." *See id.* at 233 (cleaned up). The Court explained that the defendant's Fifth Amendment right against self-incrimination is "personal to the defendant" and "does not extend to the testimony or statements of third parties called as witnesses at trial." *Id.* at 234.

¶33 The Court also rejected the argument that the trial court violated the defendant's Sixth Amendment right to compulsory process and cross-examination by conditioning the investigator's testimony on disclosure of the report. *See id.* at 241. The Court explained that "[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." *Id.*

¶34 In reaching those conclusions, the Court emphasized how the adversarial system serves to accomplish the "dual aim of our criminal justice system[,] . . . that guilt shall not escape or innocence suffer." *Id.* at 230 (cleaned up). Quoting its decision in *United States v. Nixon*, 418 U.S. 683 (1974), the Court continued:

> "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense."

*Nobles*, 422 U.S. at 230–31 (quoting *Nixon*, 418 U.S. at 709).

¶35 Five years after deciding *Nobles*, the Supreme Court promulgated rule 26.2 of the Federal Rules of Criminal Procedure. *See generally* FED. R. CRIM. P. 26.2 (1980). The rule not only imported the substance of the Jencks Act into the criminal rules, but also imposed a reciprocal discovery obligation on the defense, which has come to be known as "reverse Jencks." *See, e.g.*, *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998) (referring to "reverse Jencks material" under rule 26.2). The adoption of rule 26.2

reflected two policy judgments: "(i) that the subject matter—production of the statements of witnesses—is more appropriately dealt with in the criminal rules; and (ii) that in light of . . . *Nobles* . . . , it is important to establish procedures for the production of defense witnesses' statements as well." FED. R. CRIM. P. 26.2 advisory committee's note to 1979 addition. Rule 26.2 was "designed to place the disclosure of prior relevant statements of a defense witness in the possession of the defense on the same legal footing as is the disclosure of prior statements of prosecution witnesses in the hands of the government under the Jencks Act." *Id.*

¶36 By the time rule 26.2 was adopted, several state courts had already "concluded that witness statements in the hands of the defense at trial should be disclosed on the same basis that prosecution witness statements are disclosed, in order to promote the concept of the trial as a search for truth." *See id.* (citing cases). And today, twenty-nine states have adopted rules of criminal procedure that require the defense to turn over "reverse Jencks" material.[37]

---

[37] *See* ARIZ. R. CRIM. P. 15.2(c)(1) (requiring the defense to provide the prosecution with any written or recorded statement of each person the defense intends to call as a witness at trial); CAL. PENAL CODE § 1054.3(a)(1) (requiring the defense to disclose any relevant written or recorded statements of those the defense intends to call as witnesses at trial); CONN. PRACTICE BOOK §§ 40-13(b), -15 (allowing the prosecution access, upon request, to statements of witnesses other than the defendant in the defense's possession relating to the subject matter about which each witness will testify, including written, recorded, transcribed, or substantially verbatim content); DEL. SUPER. CT. CRIM. R. P. 16(d)(1)(E) (allowing the prosecution access, upon request, to any relevant written or recorded statements of witnesses); FLA. R. CRIM. P. 3.220(d) (requiring any defendant who elects to participate in discovery to disclose the statements of all witnesses the defense expects to call at trial); GA. CODE § 17-16-7 (requiring the defense to produce any statement of any witness the defense intends to call at trial if that statement is in the possession of the defense and relates to the subject matter of the witness's testimony); HAW. R. PENAL P. 16(c)(2)(i) (requiring the defense to disclose relevant written or

(continued . . .)

recorded statements—except statements recorded by defense counsel—of those witnesses the defense intends to call at trial); ILL. SUP. CT. R. 413(d)(1) (allowing the prosecution access, upon filing of a written motion, to relevant written or recorded statements—in the defense's possession—of those witnesses the defense intends to call at trial); IND. R. CRIM. P. 2.5(C)(1)(a) (requiring the defense to produce relevant written or recorded statements of witnesses the defense intends to call at trial); IOWA R. CRIM. P. 2.14(2)(a) (requiring the defense to turn over statements in the defense's possession that are not privileged, other than those of the defendant, if the court orders the prosecution to permit the defense to inspect certain discretionary discovery items in the prosecution's possession); LA. CODE CRIM. P. 725.1(B)(1) (allowing the prosecution access, upon request, to any written or recorded statements of any witness the defense intends to call at trial); MASS. R. CRIM. P. 14(a)(1)(B) (requiring the defense to disclose the statements of those witnesses the defense intends to call at trial); MICH. CT. R. 6.201(A)(2) (allowing the prosecution access, upon request, to any written or recorded statement—including electronically recorded statements but excluding any statement made by the defendant—relating to the case by those witnesses the defense may call at trial); MINN. R. CRIM. P. 9.02 subd. 1(4) (allowing the prosecution access, upon request, to relevant written or recorded statements of witnesses the defense intends to call at trial, statements of prosecution witnesses obtained by the defense, written summaries known to the defense of the substance of any oral statements made by prosecution witnesses to the defense, and the substance of any oral statements that relate to the case made by witnesses the defense intends to call at trial); MISS. R. CRIM. P. 17.3(1) (requiring any defendant that requests discovery to disclose to the prosecution the contents of any statement that is written, recorded, or otherwise preserved of all witnesses-in-chief that the defense may offer at trial); MO. SUP. CT. R. 25.05(a)(2) (allowing the prosecution access, upon request, to written or recorded statements of witnesses the defense intends to call at trial, as well as existing memoranda reporting or summarizing part or all of their oral statements); MONT. CODE ANN. § 46-15-323(4), (6)(a) (requiring the defense to disclose all written reports or statements made by witnesses that the defense intends to use at trial); NEB. REV. STAT.

(continued . . .)

¶37 The question of whether we should follow the lead of those jurisdictions is not before us today. In a pending appeal such as this, we apply our rules as they are. *See, e.g.*, *In re Discipline of Steffensen*, 2016 UT 18, ¶ 11, 373 P.3d 186 (commenting that "a policy argument is a perfectly respectable basis for a request for a forward-looking amendment to our rules," but such an argument "falls far short as a ground for overriding the clear terms of an existing rule" because "[o]ur rules . . . are entitled to respect unless

---

§ 29-1916(1) (allowing the court to require the defendant to grant the prosecution access to items comparable to written or recorded statements); NEV. REV. STAT. § 174.245(1)(a) (allowing the prosecution to request written or recorded statements of witnesses that the defense intends to call during the defendant's case-in-chief); N.H. R. CRIM. P. 12(b)(4)(C) (requiring the defense to provide the state with all statements, including written, recorded, or transcribed statements, from witnesses that the defense anticipates calling at trial); N.J. CT. R. 3:13-3(b)(2)(C) (requiring the defense to provide the state with written statements or summarized oral statements made by witnesses that the state may call as a witness at trial); NMRA, RULE 5-502(A)(3) (requiring the defense to disclose any statements made by witnesses the defendant intends to call at trial); N.Y. CRIM. PROC. § 245.20(4) (requiring the defense to disclose all written, recorded, or summarized statements of witnesses that the defense intends to call at trial); OHIO CRIM. R. 16(H)(5) (requiring the defense to provide the prosecution with any written or recorded statements from witnesses in the defendant's case-in-chief or in surrebuttal); OKLA. STAT. tit. 22, § 2002(B)(1) (allowing the state to request the defense to disclose written, recorded, or summarized witness statements); OR. REV. STAT. § 135.835(1) (requiring the defense to disclose relevant written or recorded statements or memoranda of oral statements from witnesses the defense intends to call at trial); R.I. SUPER. CT. R. CRIM. P. 16(b)(5) (allowing the state to request all written or recorded verbatim statements of witnesses that the defense expects to call at trial, or a summary of the testimony that witnesses are expected to give at trial); WASH. SUPER. CT. CRIM R. 4.7(b)(1) (requiring the defense to disclose the substance of oral statements or any written or recorded statements made by witnesses); WIS. STAT. § 971.23(2m)(am) (allowing the prosecution to demand that the defense disclose any relevant written or recorded statements from witnesses).

and until we amend them"). But in addition to our appellate review responsibilities, this court is charged with promulgating rules of procedure. UTAH CONST. art. VIII, § 4. And, as far as we can tell, our court has never considered whether to amend the Utah Rules of Criminal Procedure to adopt a "reverse Jencks" requirement.

¶38 Anyone wishing to propose a potential rule change may petition this court to refer the matter to our Advisory Committee on the Rules of Criminal Procedure or may contact the committee directly. That committee consists of members appointed by this court to represent a cross-section of interests and is charged with studying proposed rule changes, gathering input from various stakeholders, considering public comment, and making recommendations to this court. That is the appropriate forum in which interested parties can advance policy arguments for and against adopting a "reverse Jencks" requirement. And that process will enable this court to make the most informed decision as to whether an amendment to rule 16(b) is warranted.

———————